COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, Beales and Alston
Argued at Richmond, Virginia


LATOYA YVETTE WILSON
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1691-13-2                      JUDGE ROSSIE D. ALSTON, JR.
                                                    FEBRUARY 24, 2015
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                            Bradley B. Cavedo, Judge

          Jennifer M. Newman (E. Temple Roach, on brief), for appellant.

          Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
          Attorney General, on brief), for appellee.


        Latoya Yvette Wilson (appellant) appeals her conviction of possession of marijuana with

intent to distribute in violation of Code § 18.2-248.1.  Specifically, appellant argues that the trial

court erred "in denying [appellant's] motion to suppress because Officer Fernandez did not have

reasonable, articulable suspicion to stop the car and therefore violated [appellant's] right against

unreasonable searches and seizures under the Fourth Amendment."  Finding no error in the trial

court's determination that no Fourth Amendment violation occurred, we affirm.

                                      I.  Background[1]

        The evidence indicated that on June 22, 2011, appellant was arrested on drug and gun

charges after the vehicle in which she was a passenger was pulled over for failure to use a turn

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

UNPUBLISHED

signal before taking a left-hand turn, purportedly in violation of Code § 46.2-848.[2] On

September 6, 2011, appellant was indicted on one count of possession of marijuana with intent to

distribute in violation of Code § 18.2-248.1. Thereafter, appellant filed a motion to suppress the

evidence found in the vehicle and on her person, arguing that there was no reasonable suspicion

to stop the vehicle. The trial court held a hearing on appellant's motion to suppress on December

19, 2011.

At the hearing, Officer Elmer Fernandez testified that on June 22, 2011, he was driving in

an unmarked police car, eastbound on Midlothian Turnpike in the City of Richmond,

approximately one to two car lengths behind the car in which appellant was a passenger. Officer

Fernandez stated that the car appellant was riding in was the only other eastbound car and that it

traveled to the far left lane and then turned left onto Labrook Drive without using a signal

indicator. There were no other vehicles between appellant's vehicle and Officer Fernandez's

vehicle, and Officer Fernandez stated that appellant's vehicle did not make a stop or brake before

turning left. Officer Fernandez testified that the reason he initiated the traffic stop was because

"[t]he vehicle made a left turn onto Labrook without using indicators."

Though Officer Fernandez apparently testified at appellant's preliminary hearing that

when appellant's vehicle took the left turn "there was no traffic at all[,]" at the hearing on the

motion to suppress, he stated that he "misspoke on that" and that in fact "There was traffic

---

[2] Code § 46.2-848 provides:

> Every driver who intends to back, stop, turn, or partly turn from a
> direct line shall first see that such movement can be made safely
> and, *whenever the operation of any other vehicle may be affected
> by such movement*, shall give the signals required in this article,
> plainly visible to the driver of such other vehicle, of his intention
> to make such movement.

(Emphasis added).

coming [westbound on Midlothian Turnpike], but as we made the left turn, there was [sic] no vehicles present at that particular time. But there was [sic] vehicles traveling westbound but just not as close." Appellant's counsel then asked Officer Fernandez, "Okay. So when they crossed, when they turned, there was no traffic at all that they were impeding or - -" and Officer Fernandez replied, "No, correct."

After Officer Fernandez testified, appellant's counsel argued that there was no reasonable suspicion to pull over the vehicle because the operation of another vehicle was not affected, as required for a violation of Code § 46.2-848. The trial court denied appellant's motion to suppress and found that Officer Fernandez had reasonable suspicion to stop the vehicle in which appellant was riding. The trial court stated

> I agree with the Commonwealth that Officer Fernandez's car alone coming in behind [appellant's] vehicle in the left turn lane is a sufficient presence of another vehicle that may be affected by the turning vehicle to require the turning vehicle to give a turn signal under [Code §] 46.2-848. And there was additional testimony that in the oncoming lane, there were vehicles back there a ways. They weren't affected by the turn, but arguably they should be entitled to the notice of the turn. So I'm going to deny the motion to suppress.

Subsequently, a bench trial was held on May 17, 2012, at which Officer Fernandez testified that after he stopped appellant's vehicle and as he approached it, he smelled a strong odor of marijuana. The driver and other occupants of the vehicle, including appellant, were asked to step out of the vehicle and searched. A small bag of marijuana was found on appellant's person, and a gun and another bag of marijuana were found in the glove box of the vehicle. At the conclusion of the trial, the trial court convicted appellant of possession of marijuana with intent to distribute and sentenced her to five years' incarceration with four years suspended. This appeal followed.

II. Analysis

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that [the appellate court] review[s] de novo on appeal." McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). In making its determination, the Court must give deference to the trial court's factual findings and "independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id. at 552, 659 S.E.2d at 515. While the burden of proof regarding the legality of the stop rests with the government, "[t]he burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error." McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980); Weathers v. Commonwealth, 32 Va. App. 652, 658, 529 S.E.2d 847, 850 (2000)).

"'[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot."'" Hamlin v. Commonwealth, 33 Va. App. 494, 501, 534 S.E.2d 363, 366 (2000) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)). "'Actual proof that criminal activity is afoot is not necessary . . . .'" Id. (quoting Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992)). "'A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion.'" Mason v. Commonwealth, 63 Va. App. 587, 597, 760 S.E.2d 831, 836 (2014) (quoting Sokolow, 490 U.S. at 10). "'The officer, of course, must be able to articulate something more than an "inchoate and unparticularized suspicion or hunch."'" Id. at 598, 760 S.E.2d at 836 (quoting Sokolow, 490 U.S. at 7). "A reviewing court must consider the totality of the circumstances known to the

officer at the time of the stop when determining whether the officer's suspicion was reasonable

. . . . 'Based upon that whole picture the detaining officers must have a particularized and

objective basis for suspecting the particular person stopped of criminal activity.'" Id. at 598-99,

760 S.E.2d at 837 (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).

Code § 46.2-848 provides:

> Every driver who intends to back, stop, turn, or partly turn from a direct line shall first see that such movement can be made safely and, *whenever the operation of any other vehicle may be affected by such movement*, shall give the signals required in this article, plainly visible to the driver of such other vehicle, of his intention to make such movement.

(Emphasis added). As the Supreme Court stated in Cubbage v. Meadows, 215 Va. 502, 505, 211

S.E.2d 262, 264 (1975),

> [Code § 46.2-848], designed to facilitate the prompt, safe and orderly flow of traffic upon our highways, [is] clear and unambiguous upon [its] face. Whenever a driver intends to perform one of the acts therein mentioned and sees, in the exercise of reasonable care, that such act is likely to affect the operation of another vehicle, the law imposes a duty upon that driver to give the requisite signal and the fact that he has the right of way does not relieve him of that duty.

Appellant contends that because there was no evidence that any other vehicles would

have been or were affected by her vehicle's left-hand turn, Officer Fernandez did not have

reasonable suspicion of a violation of Code § 46.2-848 sufficient to pull over the vehicle in

which appellant was a passenger.[3] The Commonwealth, however, argues that "[a]n objective

---

[3] Appellant relies heavily on Commonwealth v. Wells, Record No. 1869-06-3, 2007 Va. App. LEXIS 9 (Va. Ct. App. Jan. 9, 2007), in support of her position. In Wells, the defendant was stopped based on the officer's suspicion of a violation of Code § 46.2-848 and the defendant's attempt to avoid a DUI checkpoint. The trial court granted the defendant's motion to suppress, finding that the evidence failed to establish reasonable, articulable suspicion that defendant violated Code § 46.2-848 or attempted to avoid or evade the checkpoint. Id. at *5. However, on appeal, the Commonwealth only challenged the trial court's determination that the officer lacked reasonable suspicion that defendant attempted to evade a checkpoint. Therefore,

police officer under those circumstances reasonably could have suspected that such a maneuver *might* have affected either his vehicle, given its close proximity, or those vehicles traveling westbound at the time of the car's turn, regardless of whether it, in fact, did so."

"When construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." Cuccinelli v. Rector & Visitors of the Univ. of Va., 283 Va. 420, 425, 722 S.E.2d 626, 629 (2012) (quoting Commonwealth v. Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011)). "To best ascertain that intent, '[w]hen the language of a statute is unambiguous, we are bound by the plain meaning of that language.' Blake v. Commonwealth, __ Va. __, __, 764 S.E.2d 105, 107 (2014) (quoting Kozmina v. Commonwealth, 281 Va. 347, 349, 706 S.E.2d 860, 862 (2011)). Code § 46.2-848 plainly provides that a motorist is only required to signal his vehicle's movement if "*any other vehicle may be affected by such movement*." Therefore, a suspected violation of Code § 46.2-848 requires an officer to not only observe a motorist fail to use a signal but also observe that the motorist's failure to use that signal may have affected other vehicles on the road.[4] Indeed, this reading of Code § 46.2-848 is supported by the articulated purpose of Code § 46.2-848 to "facilitate the prompt, safe and orderly flow of traffic upon our highways." Cubbage, 215 Va. at 505, 211 S.E.2d at 264. A signal of course is not necessary to facilitate the orderly flow of traffic if no other vehicles are around or would be affected by a vehicle's un-signaled turn.

---

the issue of whether there was reasonable suspicion justifying the stop based on the defendant's failure to give a turn signal was not before the Court.

[4] Though *dicta*, this understanding of Code § 46.2-848 is supported by the Court's acknowledgement in Commonwealth v. Eaves, 13 Va. App. 162, 408 S.E.2d 925 (1991), that the Commonwealth did not contend that the defendant violated Code § 46.2-848 in that case because "other than the vehicle which was traveling beside [defendant's] vehicle, there was no evidence of any other vehicle on the highway at the time which would have been affected by the [defendant's] turn." Id. at 165 n.2, 408 S.E.2d at 927 n.2.

While neither the Supreme Court nor this Court has ever addressed the precise issue before us today, this plain reading of Code § 46.2-848 is supported by holdings from state circuit courts, the United States Court of Appeals for the Fourth Circuit, and the United States District Court for the Eastern District, as all have found an officer's observation of a motorist failing to use a turn signal sufficient to reasonably suspect a violation of Code § 46.2-848. In so holding, these courts have tellingly noted the presence of other vehicles in the vicinity of the defendants' vehicles when making an un-signaled turn.[5] It is clear that from a plain reading of the statute and the direction of these cases, though not binding on this Court, that an officer's observation that other vehicles may be affected by an un-signaled turn is a necessary component of a violation of, and thus, reasonable suspicion of a violation of Code § 46.2-848.

In the present case, Officer Fernandez testified that on the night in question, he was traveling approximately one to two car lengths behind the vehicle in which appellant was a passenger. While Officer Fernandez did not testify that the driver's failure to provide a turn signal actually affected the movement of his vehicle in any way, he need not have testified that a failure to provide a turn signal would have definitively affected the movement of his vehicle, but rather that it *might* have affected the movement of his vehicle. Certainly a vehicle traveling one to two car lengths behind another vehicle that fails to signal a left-hand turn might indeed be

---

[5] See Commonwealth v. Fadeley, Case No. CR 04-10, 04-05, 2004 Va. Cir. LEXIS 133 at *10 (Charlottesville, Aug. 2, 2004) (defendant's motion to suppress denied because defendant "had more than one option as to which direction to turn, [and therefore] her movements may have affected the operation of another vehicle situated at the light."); United States v. Agee, No. 98-4193, 1999 U.S. App. LEXIS 401, at *5 (4th Cir. Jan. 13, 1999) ("Because the evidence [was] uncontroverted that there were other vehicles in the area of [defendant's] unannounced right turn, including the officer's squad car, there existed at least the probability that one of them 'may [have been] affected' by [defendant's] turn."); United States v. Brown, Case No. 2:09cr140, 2009 U.S. Dist. LEXIS 97964, at *8-9 (E.D. Va. 2009) ("[I]n light of the fact that at least [the officer's] police car was in the immediate vicinity of defendant's vehicle, [defendant's failure to signal when turning out of the parking lot or when changing lanes] sufficed to demonstrate at least a probability that a violation of [Code §] 46.2-848 . . . had occurred.").

affected by the vehicle's failure to so signal.  The fact that the vehicle so travelling behind the primary vehicle is an unmarked police vehicle may well underscore the importance of meeting the clear requirements of the statute.[6]  Consequently, on the facts of this case, Officer Fernandez had reasonable suspicion of a violation of Code § 46.2-848 sufficient to conduct a traffic stop of the vehicle in which appellant was a passenger.

Therefore, we hold that the trial court did not err in denying appellant's motion to suppress.

Affirmed.

---

[6] Any unannounced turn by a vehicle travelling on the roads carries its own risks for vehicles travelling behind the primary vehicle.  By nature, police vehicles are some of the most unpredictable vehicles on the road.  They may have to activate their emergency equipment at a moment's notice, or speed up unexpectedly.