COURT OF APPEALS OF VIRGINIA

Present:  Judges Malveaux, Ortiz and Causey
Argued at Lexington, Virginia

GENARO GUZMEN VAZQUEZ

MEMORANDUM OPINION[*] BY
v.      Record No. 0356-22-3      JUDGE DANIEL E. ORTIZ
FEBRUARY 14, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Samantha Offutt Thames, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

John Beamer, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, the Circuit Court of Henry County convicted Genaro Guzmen

Vazquez of possession of methamphetamine with intent to distribute, possession of marijuana with

intent to distribute, and possession of cocaine. Guzmen[1] assigned error on five grounds: that the

evidence was insufficient with respect to all three counts, that the trial court erred in denying his

motion to suppress, and that the trial court erred in admitting the April 10, 2019 video[2] into

evidence. The evidence sufficiently supported Guzmen's convictions, and the court did not abuse

its discretion in denying his motion to suppress nor in admitting the video. Even if the use of GPS

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Genaro Guzmen Vazquez goes by the last name Guzmen, and this opinion will refer to
him as such.

[2] VID-20190409-WA0349.

monitoring and the light sensor were searches, the evidence seized would be admissible under the inevitable discovery doctrine. We affirm.

## BACKGROUND

On April 10, 2019, Virginia State Police Special Agent F.H. Figgers of the Counter Terrorism Drug Interdiction Task Force was on duty at a FedEx facility near Danville, Virginia. Figgers was monitoring packages at the facility to identify suspicious parcels that, in his experience, might contain narcotics or other illicit substances. Figgers identified a suspicious package ("Guzmen package") and placed it in a lineup with four similarly sized control boxes for a narcotic canine sniff. Virginia State Trooper G.W. Clifton and his canine, Cane, conducted a sniff on the package lineup, and Cane alerted on the Guzmen package. The package was addressed to Yanet Guzmen at 39 Grand Summit Circle, Collinsville, Virginia and had a FedEx tracking number of 786545116841.

Figgers obtained a search warrant to open the Guzmen package. The package was opened pursuant to the warrant. It contained ten vacuum-sealed bags of marijuana, each weighing approximately one pound, for a total of ten pounds of marijuana. Testing by the Department of Forensic Science positively identified the contents as marijuana. The box and its contents were admitted into evidence at trial, along with the certificate of analysis.

Virginia State Police Special Agent D.R. Lambert obtained a search warrant for the listed address, and law enforcement planned an undercover delivery of the package. The parcel was repackaged with a GPS tracker inside the box. The use of a GPS tracker and light sensor was not authorized under the search warrant. The tracker was equipped with a light sensor, which alerted when the package was opened. This allowed law enforcement to time their entry into the home. Special Agent E.A. Fisher dressed as a FedEx delivery person and delivered the repackaged parcel to 39 Grand Summit Circle. No one answered Fisher's knock on the door, but he testified

to hearing movement inside the home.  Fisher placed the package on the front porch and returned to the van, leaving the area.

At 2:00 p.m. that same day, the light sensor alerted law enforcement, and Lambert advised the TAC Team to execute the search warrant for 39 Grand Summit Circle.  Guzmen was the only person present in the house when it was searched.  The FedEx box was found in a bedroom, later designated "bedroom one."  Several items were found in the same bedroom, including: a notebook that appeared to be a ledger for drug sales, a plastic bag with a white powdery substance, later identified as cocaine, two Mexican IDs bearing Guzmen's name, $203 in cash, a knife, and a black bag.  The black bag contained ten thousand dollars and various car titles in Guzmen's name.  Officers also found a cell phone.  During the search, the officers slid a living room sofa away from the wall and noticed the back flap of the furniture had been torn.  In the hole, officers found multiple baggies of a substance, later confirmed to be methamphetamine, hidden in the sofa.

Upon a later search of the cell phone, law enforcement extracted self-taken photographs of Guzmen, a photograph sent through WhatsApp[3] of the Guzmen package's FedEx receipt and tracking number, and a video dated April 10, 2019.  The video was taken by an unidentified male, showing what appears to be a bedroom at 39 Grand Summit Circle.  The video also shows two Tupperware containers and two Ziplock bags of methamphetamine, similar to those found in the sofa.

On January 7, 2020, Guzmen moved to suppress the evidence, arguing that it was gathered in violation of his Fourth Amendment rights due to the GPS tracker and light sensor. The trial court found that the search was a "perfectly valid search" and denied the motion.

---

[3] WhatsApp is an international instant messaging application that allows users to send text and voice messages, make voice and video calls, and share images, videos, documents, user locations, and other content.

Guzmen filed a motion *in limine* to exclude the April 10, 2019 video found on the cell phone. The trial court elected to rule on the motion *in limine* when the Commonwealth attempted to introduce the video. When the Commonwealth's attorney moved to introduce the video at trial, Guzmen renewed his objection. The court then overruled Guzmen's objection and permitted the video to be entered into evidence. At the conclusion of the Commonwealth's evidence at trial, Guzmen moved to strike all three charges, arguing that the evidence was insufficient to demonstrate he possessed the narcotics found. The court denied his motion. This appeal followed.

ANALYSIS

I. The trial court did not err in denying Guzmen's motion to suppress because it was admissible under the doctrine of inevitable discovery.

Guzmen argued that the trial court erred in denying his motion to suppress because the evidence from 39 Grand Summit Circle was seized in violation of the Fourth Amendment. He contends that the use of a GPS device equipped with a light sensor in the Guzmen package was an unconstitutional search under the Fourth Amendment and that any evidence gained from the search of 39 Grand Summit Circle should be suppressed under the exclusionary rule.

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that [this Court] review[s] de novo on appeal." *McCain v. Commonwealth*, 275 Va. 546, 551 (2008). "In making such a determination, [this Court] give[s] deference to the factual findings of the circuit court, but [it] independently determine[s] whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Id.* at 552. "The defendant has the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error." *Id.*

- 4 -

Guzmen contends the Virginia State Police's use of the GPS unit and light sensor was an illegal search because the warrant they obtained made no mention or authorization of GPS monitoring or light sensors. The warrant solely authorized the collection of items. It is uncontested that Virginia State Police utilized both physical officer surveillance as well as GPS monitoring to track the location of the Guzmen package. The light sensor and GPS tracker provided law enforcement with additional details including when the box was opened and where it was. Guzmen contends the exclusion of the GPS unit from the warrant renders it insufficient for the search conducted because law enforcement did not execute their warrant for 39 Grand Summit Circle until they received an alert from the light sensor that the package had been opened.

Assuming without deciding that the use of a GPS equipped with a light sensor was an illegal search, the inevitable discovery doctrine applies in this situation. Regardless of whether the devices operated as anticipated, the police would have executed their valid search warrant for the home. The alert from the GPS and light sensor affected the timing of the entry to the house, but was not a necessary prerequisite for execution of the search warrant.

"Ordinarily, evidence obtained as the result of an unlawful search is subject to suppression under the exclusionary rule. However, not all illegally obtained evidence is subject to suppression." *Commonwealth v. Jones*, 267 Va. 532, 535 (2004) (citations omitted). "One of the exceptions to the exclusionary rule is the doctrine of inevitable discovery." *Id.* The inevitable discovery doctrine permits "the admission of evidence that would have been discovered even without the unconstitutional source." *Utah v. Strieff*, 579 U.S. 232, 238 (2016). To establish the inevitable discovery doctrine, "the Commonwealth must show '(1) a reasonable probability that the evidence in question would have been discovered by lawful means but for the police misconduct' and '(2) that the leads making the discovery inevitable were possessed by the

- 5 -

police at the time of the misconduct.'" *Carlson v. Commonwealth*, 69 Va. App. 749, 763 (2019). Both requirements are met under the current facts.

First, there is a reasonable probability that the evidence in question would have been discovered by lawful means because a valid search warrant existed for 39 Grand Summit Circle, which specifically authorized law enforcement to enter the premises and seize drug-related items.[4] This warrant existed prior to the repackaged parcel's entry into the residence, and it explicitly authorized the search and seizure of the items now disputed. Special Agent Lambert testified that the home was to be searched "[o]nce the package entered the residence and we either [gave] it an amount of time *or . . .* the light sensor was activated." (Emphasis added). Thus, the search warrant for the home would have been executed regardless of the light sensor's indication. Guzmen contends that there was a possibility that the officers would not have executed the valid search warrant they obtained. While anything is *possible*, the inevitable discovery doctrine does not require the proponent of the evidence to show that under any and all circumstances the evidence would have been found. It only requires the Commonwealth show a reasonable probability that the evidence would have been lawfully discovered. The Commonwealth has met that burden.

Second, law enforcement possessed both the leads and the search warrant for 39 Grand Summit Circle at the time of the alleged misconduct. The anticipatory search warrant was

---

[4] The warrant issued specifically authorized law enforcement to seize

> [a] FedEx Parcel bearing tracking number 786545116841, Marijuana and any other illegal drugs, weapons and any paraphernalia including but not limited to scales, monies, packing supplies, related papers, receipts, letters, records, pictures, videos, cellular phones, phone records, electronic recordings or devices, and photographs identifying any co-conspirators or other information that may be found relating to sale, distribution, or intent to sell marijuana in violation of Code Section 18.2-248.

granted prior to the package entering the home. This means that law enforcement had the legal leads necessary for the search at the time of the purported misconduct, namely the GPS and light sensor entering the home.

Because the evidence is admissible under the inevitable discovery doctrine, this Court need not determine the legality of the placement of the GPS and light sensor into the Guzmen package. The trial court's admission of subsequent evidence discovered was not an error.

## II. The Commonwealth introduced sufficient evidence to support all three of Guzmen's convictions.

On appeal, Guzmen contends that the Commonwealth did not establish the essential elements necessary to sustain a conviction for possession of methamphetamine with intent to distribute, possession of marijuana with intent to distribute, and possession of cocaine.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Smith v. Commonwealth*, 72 Va. 450, 460 (2018)). "The question on appeal, is whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). "If there is any evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

At trial and on appeal, the Commonwealth relies on a theory of constructive possession for the charged methamphetamine, marijuana, and cocaine. Alternatively, the Commonwealth also posits a theory of actual possession for the marijuana. To support a conviction based on constructive possession, the evidence must demonstrate "acts, statements, or conduct of the

- 7 -

accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control." *Yerling v. Commonwealth*, 71 Va. App. 527, 532 (2020).

"Knowledge of the presence and character of the controlled substance may be shown by evidence of the acts, statements or conduct of the accused." *Eckhart v. Commonwealth*, 222 Va. 447, 450 (1981). A factfinder may also consider the open visibility of drugs, as well as the defendant's occupancy of the place where drugs are found. *See Brown v. Commonwealth*, 15 Va. App. 1, 9-10 (1992) (en banc) (holding that the factfinder could consider that drugs were found "on the dashboard in plain view"). "Circumstantial evidence is as acceptable to prove guilt as direct evidence," especially as "it is practically the *only* method of proof" for elements like intent and knowledge. *Abdo v. Commonwealth*, 64 Va. App. 468, 475-76 (2015) (quoting *Parks v. Commonwealth*, 221 Va. 492, 498 (1980)).

### A. Possession of marijuana and cocaine

Here, the evidence demonstrated that Guzmen possessed both the marijuana and cocaine found during the search of the house. Both were found in plain view in bedroom one. Guzmen was the sole person in the house—other than law enforcement—at the time of the search. Additionally, Guzmen's identification cards, cell phone, and car titles were found on the air mattress next to the marijuana and cocaine in bedroom one.

The open visibility of the drugs, coupled with Guzmen's occupancy in the home, is strong circumstantial evidence supporting the determination that Guzmen had knowledge of the presence and character of the marijuana and cocaine and that Guzmen exerted dominion and control over the drugs. Therefore, the trial court's finding is not plainly wrong or without evidence to support it. The Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that Guzmen was guilty of possession of marijuana and possession of cocaine.

## B. Possession of methamphetamine

The totality of the evidence supports the conclusion that Guzmen was aware of the methamphetamine and his conviction for possession of methamphetamine. The ledger was found in the bedroom along with Guzmen's other personal possessions. This ledger referenced "ice" and "coke." The Commonwealth's experts testified that these were slang references to methamphetamine and cocaine. Guzmen was the only person in the home at the time of the search. Although the methamphetamine was not in plain sight, it was clear from other evidence that Guzmen resided in the home. Additionally, the April 10, 2019 video on Guzmen's phone showed bags of what appears to be the same methamphetamine found in the sofa. This video supports the likelihood that Guzmen had knowledge of the existence and nature of the methamphetamine in the sofa and exerted dominion and control over it.

Although defense witness Dulce Pomce testified that the methamphetamine belonged to Guzmen's deported brother, Roberto Guzmen—who, according to Pomce, lived at 39 Grand Summit Circle at the time of the search—it is well-settled that "issues of witness credibility and the weight afforded a witness' testimony 'are matters solely for the fact finder[,] who has the opportunity to see and hear that evidence as it is presented.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (alteration in original) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018)). Because Pomce's testimony relied on hearsay from an unavailable declarant related to Guzmen—Roberto Guzmen—the trial court was entitled to reject her testimony as incredible.

On review, this Court's sole function is to determine whether a reasonable jurist factfinder, looking at the totality of this evidence, could *reasonably* conclude Guzmen possessed the drugs. Given the totality of the evidence, considering the ledger referring to "ice" with Guzmen's personal items, his residence in the home, the video of methamphetamine on his cell

phone, and appearing to be the sole person occupying the home, the trial court's determination was not plain error.

### C. *Intent to distribute marijuana and methamphetamine*

Direct proof of intent to distribute drugs is "often impossible," hence it "must be shown by circumstantial evidence." *Ervin v. Commonwealth*, 57 Va. App. 495, 521 (2011).

> Factors that a trial court may consider as indicators that a defendant intended to distribute the illegal drugs in his possession include the possession of a quantity of drugs greater than that ordinarily possessed for one's personal use, the method of packaging of the controlled substance, and the absence of any paraphernalia suggestive of personal use.

*Id.* at 521-22. However, "[i]f evidence of intent is wholly circumstantial, 'all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence.'" *Shackleford v. Commonwealth*, 32 Va. App. 307, 327 (2000) (citation omitted).

There is sufficient evidence to support Guzmen's convictions for intent to sell marijuana and methamphetamine. The marijuana was packaged in one-pound increments in vacuum-sealed packages, totaling ten pounds of marijuana. The methamphetamine hidden in the sofa weighed 3,933 grams. Commonwealth witness Lambert was admitted as an expert in narcotics sales, distribution, and investigation. He opined that the methamphetamine and marijuana quantities and packaging were consistent with distribution, in particular when taken in consideration with the presence of packaging material, the presence of a ledger, and significant amounts of cash. The evidence sufficiently support's Guzmen's convictions.

III. The trial court did not err in admitting VID-20190409-WA0349 because it was properly authenticated and relevant.

Finally, Guzmen argues the trial court erred in admitting the April 10, 2019 video. He contends the video was improperly admitted because it was improperly authenticated, irrelevant, and more prejudicial than probative. All of these claims fail.

The admissibility of evidence is subject to an abuse of discretion standard of review. *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* "In reviewing an exercise of discretion, we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." *Beck v. Commonwealth*, 253 Va. 373, 385 (1997).

Guzmen filed a motion *in limine* to exclude video evidence found on the cell phone recovered at 39 Grand Summit Circle when the officers executed their search warrant. The video depicts what appears to be bedroom one, with a male voice speaking Spanish as the camera pans over multiple boxes of a crystalized substance. The video does not show the narrator, nor was there any evidence presented at trial to establish the speaker in the video.

A trial court's admission of videos, "like a photograph, rests within the sound discretion of the trial court. If the court determines that the information on the tape is relevant and that the probative value of its contents outweighs any prejudicial effect, it should be admitted." *Brooks v. Commonwealth*, 15 Va. App. 407, 410 (1992) (citation omitted). However, the party offering the videotape "must authenticate it and show that it is relevant." *Id.*

*A. Authentication*

A video may be authenticated if it is either a fair and accurate depiction of what a witness observed, or if there has been an adequate foundation laid as to the "accuracy of the process producing it," which renders the video a "silent witness." *Ferguson v. Commonwealth*, 212 Va.

745, 746 (1972). The test to authenticate a video as a silent witness is "whether the evidence is sufficient to provide an adequate foundation assuring the accuracy of the process producing it." *Id.* at 747.

In *Ferguson*, the Supreme Court of Virginia affirmed the trial court's admission of a photograph under the independent silent witness theory, finding that a store manager's testimony regarding the process for stamping the check with a transaction number and subsequent photograph by a Regiscope camera provided adequate foundation to assure the accuracy of the process producing the photograph. *Id.*

In *Brooks*, this Court likewise affirmed a trial court's admission of a videotape under the independent silent witness theory, finding an adequate foundation when the evidence showed that video alterations were not possible. 15 Va. App. at 410 ("The evidence showed that the videotape in this case included an on-screen display of the passage of time in seconds and that the tabs which allow alteration of the tape had been removed; these devices helped to ensure that the tape had not been interrupted or altered in any way."). We held that "[t]his evidence, taken as a whole, provided the trial court with more than adequate grounds for determining that the tape was an accurate representation of what it purported to depict." *Id.* at 411.

Here, Special Agent Wes Rorrer testified regarding his extraction of the cell phone's data. Rorrer explained the software he used to extract the data and his training and experience in using the program. Rorrer testified that the program, Cellebrite, examines the path of the photos or videos to determine whether they were created by the phone. He testified that Cellebrite does not add any photos or videos to the cell phone. Similar to *Brooks*, the Commonwealth provided testimony to support the reliability and source of the video derived from the cell phone, including

- 12 -

the information that the video at issue was taken[5] on the same day as the search and seizure (April 10, 2019) and that the selfie of Guzmen was taken the night prior to the search. Finally, Rorrer testified that the Cellebrite program accurately processed the video and that the video remained unaltered. A reasonable factfinder could have found sufficient authentication to admit the video into evidence. As such, the trial court did not abuse its discretion in admitting it.

*B. Relevance*

Relevant evidence is "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "The scope of relevant evidence in Virginia is quite broad, as '[e]very fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue is relevant.'" *Commonwealth v. Proffitt*, 292 Va. 626, 634 (2016). Under the abuse of discretion standard, it must be established that no reasonable factfinder could have concluded that the video was relevant evidence in this case.

The video is relevant because it tends to make a fact—namely Guzmen's knowledge of the narcotics—more probable. To prove possession with intent to distribute methamphetamine, the Commonwealth must establish the defendant either actively or constructively possessed the methamphetamine. This video tends to show Guzmen's knowledge of the presence and character of the methamphetamine found in the sofa.

The video is in no way dispositive of Guzmen's knowledge or lack thereof. Rather, it simply tends to make a fact of consequence more probable. While Guzman is correct in stating that no evidence was introduced showing that Guzmen took the video, spoke in the video, or was aware of the video, the Commonwealth introduced sufficient evidence showing that the cell

---

[5] Agent Rorrer testified that the "modified date" is the date the picture or video was "probably . . . created."

phone seized was Guzmen's cell phone. Specifically, the cell phone contained multiple self-taken photographs of Guzmen, it was found among Guzmen's possessions, and it was the only phone found in the house while Guzmen was the sole occupant. The factfinder can make reasonable inferences that the cell phone was Guzmen's and that Guzmen had knowledge of the video contained on his cell phone.

Given the above facts and circumstances, the April 10, 2019 video was relevant and admitting it at trial was not an abuse of discretion.

### C. Prejudice

"In determining whether relevant evidence should be admitted, the trial court must apply a balancing test to assess the probative value of the evidence and any undue prejudicial effect of that evidence." *McCloud v. Commonwealth*, 269 Va. 242, 257 (2005). "Under this balancing test, relevant evidence will only be excluded when its probative value is 'substantially outweighed' by its unfair prejudice." *Proffitt*, 292 Va. at 634.

Guzmen argues that the video depicts a crime "separate and apart . . . from the charged methamphetamine offense." He contends that it is impossible to determine that the video depicts the same methamphetamine the officers found in the video and that it is "impossible" to determine that the video was created on the same day, as Rorrer testified that the "modification date" was April 10, 2019. However, Rorrer also testified that the "modified date" is likely the date that the video was created.

The video is not more prejudicial than probative because it illustrates near identical baggies of methamphetamine, taken the same day as the search warrant. The charge of constructive possession of methamphetamine requires the Commonwealth to show that Guzmen had awareness of the presence and nature of the methamphetamine. This video, while not dispositive, is highly probative of Guzmen's knowledge and, therefore, constructive possession

of the methamphetamine. Any prejudice is minimal given the recency of the video and the totality of the other circumstantial evidence.

CONCLUSION

The trial court's judgment was not plainly wrong or without evidence to support it. It did not err in admitting evidence found at 39 Grand Summit Circle because the evidence would have been seized pursuant to the lawful search warrant issued for the home. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Guzmen possessed marijuana with intent to distribute, possessed methamphetamine with intent to distribute, and possessed cocaine. Finally, the trial court did not abuse its discretion in admitting the video into evidence because it was properly authenticated, relevant, and not unduly prejudicial. Accordingly, we affirm the convictions.

*Affirmed.*