COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Friedman and Callins
Argued at Richmond, Virginia

ARMAND GERIVIS RODRIGUEZ, JR.

                                           MEMORANDUM OPINION[*] BY

v.      Record No. 1305-21-2          JUDGE DOMINIQUE A. CALLINS
                                          FEBRUARY 28, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Claude V. Worrell, II, Judge

Bryan Jones (Bryan J. Jones, LLC, on briefs), for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Armand Gervais Rodriguez, Jr.,[1] appeared before the Circuit Court of Albemarle County

and entered an *Alford* plea to one count of possession with intent to distribute a controlled

substance, in violation of Code § 18.2-248. On appeal, Rodriguez contends that the trial court

erred in denying his motions to suppress the evidence of the Commonwealth on the grounds that

(1) he was seized in violation of the Fourth Amendment of the U.S. Constitution and (2) the

police lacked probable cause to support an arrest warrant. For the following reasons, we

disagree and affirm the judgment of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] This spelling of Rodriguez's middle name is consistent with the spelling he gave when
before the trial court as well as the spelling provided by Rodriguez's counsel.

BACKGROUND[2]

On July 18, 2019, Albemarle County Police Officer Jordan Weethee and other officers were surveilling an Outback Steakhouse restaurant in Albemarle County. The officers were there as part of a "buy/bust operation" involving a confidential informant. The officers had arranged to have the informant buy a large quantity of cocaine from Brandon Pelham, who, the informant noted, was eating at the steakhouse and would be driving a Grand Marquis. The informant also indicated that Pelham would need to meet with an unidentified drug "source" to obtain the drugs. Initially, the informant was to purchase five ounces of cocaine from Pelham. However, shortly before the meeting was to occur, the officers reduced the requested quantity to three ounces and provided the informant with $3,900 to make the purchase.

As they sat, the officers saw a silver Hyundai enter the parking lot at a slow rate of speed. The driver, dressed in a white t-shirt and hat, parked but did not exit the car. The driver's behavior piqued the officers' suspicion. Trying "to keep eyes" on the car, the officers recorded its license plate and determined the car was a rental vehicle. Officers later identified the driver of the silver Hyundai as Rodriguez.

After he exited the restaurant, Pelham drove to a Costco parking lot across the street, where the informant was shopping. Pelham told the informant that he needed to meet his source at a nearby apartment complex. This information was transmitted by wire to the officers. The informant "fronted" Pelham the purchase money, and the officers followed Pelham to the apartment complex. Pelham parked in the apartment complex parking lot, in which, the officers observed, Rodriguez was standing near a silver Hyundai, wearing a white shirt and hat. Officer Weethee directly observed Rodriguez exit the silver Hyundai.

---

[2] We consider the evidence in the light most favorable to the Commonwealth and accord to it the benefit of all reasonable inferences deducible therefrom. *Branham v. Commonwealth*, 283 Va. 273, 279 (2012) (citation omitted).

After Rodriguez and Pelham greeted each other, they entered Pelham's car. The officers then "move[ed] in [to] effect the arrest." While escorting Pelham out of the car, Officer Weethee saw a large quantity of cash and "what appeared to be a large amount of a white powdery substance, later field tested" and determined to be cocaine. Detective Matthew McCall, who approached the passenger side of the vehicle where Rodriguez was located, very briefly detained Rodriguez after seeing "cash everywhere" as well as cocaine on the middle of the front bench seat of the car, in "plain view," "right next to" Rodriguez's "left thigh, knee area."

The silver Hyundai, parked a few parking spaces from Pelham's car, was unoccupied but running. By checking its license plate, the officers verified that the silver Hyundai at the apartment complex was the same one that they saw Rodriguez driving at the restaurant. From outside the car, officers could see a vacuum-sealed bag with knotted corners cut open, containing what appeared to be cocaine. Subsequent testing confirmed that the bags in the Hyundai contained two ounces of cocaine, while the bags in Pelham's car were confirmed to contain three ounces of cocaine. All five bags of cocaine were packaged similarly in knotted bags. The police also found a gun in the trunk of the Hyundai. After being Mirandized, Rodriguez stated that the gun was not his and belonged to his girlfriend.[3]

Later that day, a magistrate issued four arrest warrants for Rodriguez. The warrants alleged several felony violations, including "possess[ing] a controlled substance classified in Schedule I or II with intent to manufacture, sell, give, or distribute it." Officer Weethee's affidavit supporting the arrest warrants swore:

> I assisted the JADE task force with an arrest operation. Based off of information from Det. Matt McCall, I was able to identify

_____

[3] Based on the record, it is not clear whether Rodriguez was Mirandized before or after the search of his rental vehicle. On appeal, the Commonwealth relies on an affidavit later submitted by Officer Weethee to construct its chronology of events. The affidavit indicates that Rodriguez had been Mirandized before being questioned about a firearm found in his rental vehicle.

Brandon Pelham inside a Grand Marquis inside of Inglewood Sq. We made contact with [Pelham] and the passenger, [Rodriguez,] where we noticed three bags of a white powdery substance that later field tested to be cocaine and weighed approx. three ounces. Additionally, cash was also seen in plain view that later totaled to be over one thousand dollars. A search of the vehicle yielded a scale as well. It was later determined that [Rodriguez] was operating a silver Hyundai sedan parked several spots over from where we originally made contact with them. In plain view on the floorboard of the sedan was approx. fifty[-]seven grams [o]f a white powdery substance that tested positive for cocaine. A firearm was also located in the trunk. [Rodriguez] was read his Miranda Rights and stated that the firearm was not his, but was his gf's. Based off of an ongoing investigation, Det McCall knew that five ounces of cocaine were to be delivered.

A grand jury charged Rodriguez with various felonies, including the possession with intent to distribute charge under Code § 18.2-248.

Prior to trial, Rodriguez filed several motions seeking to suppress the results of the search and the evidence in support of his arrest.[4] Regarding suppression of the two bags of cocaine found in Rodriguez's vehicle, the trial judge found that the bags were in plain view and that there was "the probable cause necessary to support an arrest warrant or a search of the vehicle." As to Rodriguez's challenges to the arrest warrants, the trial court assessed the affidavit undergirding the arrest warrant and concluded that Officer Weethee had made "specific detailed statements that can be verified." The trial court denied all of Rodriguez's motions to suppress.

Rodriguez ultimately entered an *Alford* plea,[5] pleading guilty to one violation of possession with intent to distribute a controlled substance under Code § 18.2-248. In exchange, the Commonwealth agreed to *nolle prosequi* the remaining charges against Rodriguez. In accordance

---

[4] Rodriguez filed several pre-trial motions, both *pro se* and through counsel, including a "Motion to Reconsider the Suppression Hearing," a "Motion for Franks Hearing," a motion to compel, and a motion to dismiss. All of Rodriguez's motions appear to be related to efforts to suppress the results of the July 18, 2019 search incident to his arrest.

[5] *North Carolina v. Alford*, 400 U.S. 25 (1970).

with the plea agreement, the trial court imposed a fifteen-year sentence, with seven years and six months suspended. The plea agreement also preserved Rodriguez's right to appeal the trial court's rulings on his motions to suppress. This appeal follows.

ANALYSIS

Rodriguez contends that, at the time of his detention, the officers lacked reasonable suspicion that he was engaged in criminal activity. He argues that because he was illegally detained, the trial court should have suppressed the resulting evidence of drug possession. But the record before us tells a different story. The officers not only had reason to detain Rodriguez, but probable cause to arrest him. Such probable cause for Rodriguez's arrest is borne out by the fact that Rodriguez's detention very quickly progressed to an arrest.[6] Thus, whether officers had reasonable suspicion for Rodriguez's detention is not a point on which we linger. The existence of probable cause both displaces the need to inquire whether officers had reasonable suspicion to detain Rodriguez in the very brief moments prior to his arrest and defeats Rodriguez's challenge to the legality of his brief detention. Accordingly, we hold that because his detention and subsequent arrest were lawful, the trial court did not err in denying Rodriguez's suppression motions.

It is well-settled that in our review of a trial court's decision on a motion to suppress, "[t]he appellant bears the burden of establishing that reversible error occurred." *Williams v. Commonwealth*, 71 Va. App. 462, 474 (2020). "On appeal, a 'defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that

---

[6] The officers' testimony and the other evidence in the record combine to produce a muddled chronology as to when, exactly, Rodriguez's arrest occurred. Indeed, pinpointing the moment of Rodriguez's arrest is complicated by the fluidity of the circumstances and that Rodriguez's initial detention seamlessly transitioned into an arrest as officers conducted their investigation. However, the question of *when* Rodriguez's arrest took place does not bear on our analysis.

we review de novo.'" *Cole v. Commonwealth*, 294 Va. 342, 354 (2017) (quoting *Cost v. Commonwealth*, 275 Va. 246, 250 (2008)).  Although we defer to a trial court's factual findings and the reasonable inferences drawn therefrom, we "determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." *Moore v. Commonwealth*, 69 Va. App. 30, 36 (2018) (quoting *Commonwealth v. Robertson*, 275 Va. 559, 563 (2008)).

"[A] police officer may, without violating the Fourth Amendment, make a brief investigatory stop of a person when the officer has a reasonable suspicion, based on objective facts, that criminal activity may be afoot." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016).  To be sure, reasonable suspicion "is more than an 'unparticularized suspicion or "hunch."'" *Bass v. Commonwealth*, 259 Va. 470, 475 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).  "In determining whether a police officer had reasonable suspicion to justify an investigatory stop . . . , we must view the circumstances 'available to the officer' at the time of the seizure and search through the eyes of a reasonable person." *Andrews v. Commonwealth*, 37 Va. App. 479, 491 (2002) (quoting *Christian v. Commonwealth*, 33 Va. App. 704, 711 (2000) (en banc)).

By comparison, "[p]robable cause for a warrantless arrest 'exists when the facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, alone are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed.'" *Hairston v. Commonwealth*, 67 Va. App. 552, 561 (2017) (quoting *Buhrman v. Commonwealth*, 275 Va. 501, 505 (2008)).  An officer "may arrest without a warrant any person who commits any crime in the presence of the officer and any person whom he has reasonable grounds or probable cause to suspect of having committed a felony not in his presence." Code § 19.2-81.  "At the heart of all the definitions of probable cause is a reasonable ground for belief of guilt 'particularized with respect to the person to be

arrested.'" *Doscoli v. Commonwealth*, 66 Va. App. 419, 427 (2016) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)); *see also Dodd v. Commonwealth*, 50 Va. App. 301, 309 (2007).

When the officers approached Pelham's car, they knew Pelham had met with their informant, accepted $3,900 as a cash "front," and would meet his source at an apartment complex and return with drugs. The police followed Pelham to the apartment complex parking lot and watched him park. They observed Rodriguez exit the silver Hyundai, also parked in the apartment complex parking lot, and greet Pelham before both men entered Pelham's car. Based on the information they received from the informant's wire and their own observations, the officers had reason to suspect that the individual Pelham met in the parking lot of the apartment complex was his drug source. Thus, the totality of the circumstances furnished support for the suspicion that the occupants of the vehicle were engaged in criminal activity sufficient to justify approaching and briefly detaining Pelham and Rodriguez.

However, upon reaching the car, the officers' reasonable suspicion of criminal activity quickly "ripened into probable cause to arrest and search" when they saw the cocaine and cash in the car with the occupants. *Williams v. Warden of Sussex I State Prison*, 278 Va. 641, 648 (2009). At that moment, and when combined with the other information available to them, the officers had probable cause to arrest Rodriguez, *particularized to Rodriguez. See Whitehead v. Commonwealth*, 278 Va. 300, 313 (2009). All the facts and circumstances within the officers' knowledge, taken together, support a reasonable belief that Rodriguez was in possession of cocaine with intent to distribute, a felony. This belief was substantiated when officers saw

physical evidence linking Rodriguez to the crime they were aware Pelham drove to the apartment complex to commit.

For the same reasons, we reject Rodriguez's assertion that the trial court should have suppressed the two ounces of cocaine officers collected from his Hyundai. The record amply establishes probable cause to arrest Rodriguez for possession of the cocaine found in the Hyundai, the only charge for which he was convicted. When the officers arrived at the scene, Rodriguez was observed getting out of the silver Hyundai wearing the same clothes the officers observed worn by the driver of the Hyundai they saw in the restaurant parking lot. The officers also verified that the license plate was the same as that they noted in the restaurant parking lot. Thus, the officers linked Rodriguez to the car, which was unoccupied but running just a short distance from where Rodriguez sat with Pelham in Pelham's car. From outside the Hyundai, the officers saw cocaine packaged in the same manner as the cocaine found in Pelham's car. Three bags of cocaine were found in Pelham's car and two in Rodriguez's rented Hyundai—the total quantity recovered corresponding to the original buy request of five ounces of cocaine, which was reduced to three ounces only shortly before the informant met with Pelham. The evidence established Rodriguez's connection to the Hyundai at the location where Pelham told the informant he would be meeting his source. These facts, combined with the similarly packaged drugs the police saw in both cars, provided the police with probable cause to also arrest Rodriguez, without a warrant, for possessing the drugs in the Hyundai.

Rodriguez asserts that it was unreasonable for officers to suspect him as the cocaine source, contending that he "could have been anyone." He protests that "[t]he mere act of walking up to Pelham and sitting in his car" could not serve as a basis for the officers to detain him. We reject Rodriguez's characterization because it wholly ignores the totality of the circumstances known to the officers. Indeed, Rodriguez "would have us engage in an erroneous

"'technical dissection" of the factors supporting probable cause,' by viewing 'each fact "in isolation, rather than as a factor in the totality of the circumstances."'" *Curley v. Commonwealth*, 295 Va. 616, 623 (2018) (citation omitted) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)). Contrary to Rodriguez's claim, the officers had reason to believe that he was not just "anyone" but that he was, specifically, Pelham's drug source. Pelham accepted cash for a drug transaction and conveyed that he would meet his source at a nearby apartment complex. Once there, officers witnessed Pelham greet Rodriguez and watched as both proceeded to enter Pelham's vehicle. These circumstances, combined with those others available to the officers in the period leading up to and following their approach, contained more than enough information for the officers to form a reasonable suspicion that Pelham and Rodriguez were, at that moment, engaged in the very activity for which Pelham drove to the apartment complex. Indeed, these circumstances, considered in their totality, indisputably support the officers' actions in detaining and, ultimately, arresting Rodriguez. *Hairston*, 67 Va. App. at 561-62.

Finally, Rodriguez carries the premise underpinning the former arguments forward to contend that his arrest warrant was fatally defective and unsupported by probable cause. He argues that the trial court erred "in denying [his] motion to suppress the arrest warrant," asserting that the affidavit supporting the arrest warrant failed to "set forth the essential facts constituting the offense charged" and contained "merely conclusory" statements that "fail to establish probable cause." As there is no procedure by which to suppress an arrest warrant, the mode by which Rodriguez seeks to affect his choice remedy is dubious.[7] A warrant is not excludable

---

[7] Although Rodriguez contends that "[t]he trial court erred in denying the motion to suppress the arrest warrant because there was no probable cause to support it," he previously sought to dismiss the warrant, claiming, in his final motion to suppress, that the affidavit was "defective" and that "the arrest warrants issued against [him] are invalid and his charges should be dismissed."

evidence. *See Green v. Commonwealth*, 299 Va. 593, 600-01 (2021) (Kelsey, J., dissenting) ("A suppression motion, after all, is simply an 'objection[] to evidence on the ground that it was illegally obtained[.]'" (first alteration in original) (quoting *United States v. Barletta*, 644 F.2d 50, 54 (1st Cir. 1981))). Regardless, Rodriguez's argument challenges the form and substance of Officer Weethee's affidavit in supporting probable cause for his arrest.

Rodriguez's argument is without merit. As the officers had probable cause to arrest Rodriguez in the first instance, and the particularized bases for that probable cause were stated in the affidavit that served as grounds for a subsequent arrest warrant,[8] the warrant itself bore the indicia of probable cause. The affidavit included detailed information about what the officers saw and discovered during a search of both vehicles, including "three bags of a white powdery substance," "over one thousand dollars," "a scale," "approx[imately] fifty[-]seven grams [o]f a white powdery substance that tested positive for cocaine," and "[a] firearm." Rather than presenting free-floating inferences, the affidavit included specific facts and empirical grounds sufficient for the magistrate to have concluded that a crime occurred, and thus, demonstrating probable cause for Rodriguez's arrest. *Cf. Belcher v. Commonwealth*, 75 Va. App. 505, 524 (2022) ("'Conclusory' is defined as '[e]xpressing a factual inference without stating the underlying facts on which the inference is based.'" (alteration in original) (quoting *Conclusory*, *Black's Law Dictionary* (11th ed. 2019))). *See also Colaw v. Commonwealth*, 32 Va. App. 806, 813 (2000); *Anzualda v. Commonwealth*, 44 Va. App. 764, 781-82 (2005) (en banc). The trial

---

[8] Code § 19.2-82 provides,

> A person arrested without a warrant shall be brought forthwith before a magistrate . . . who shall proceed to examine the officer making the arrest under oath. If the magistrate . . . has lawful probable cause upon which to believe that a criminal offense has been committed, and that the person arrested has committed such offense, he shall issue . . . a warrant under the provisions of § 19.2-72 . . . .

court rightly found that the statements in the affidavit were not conclusory, but instead were "very specific detailed statements that can be verified."[9]

Accordingly, we find no error in the trial court's decision to deny Rodriguez's motions to suppress.

CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*

---

[9] Citing *United States v. Leon*, 468 U.S. 897 (1984), Rodriguez also contends that the "good faith exception does not apply in this case because the information provided in the supporting affidavit was so lacking that official reliance was unreasonable." We reject Rodriguez's misplaced reliance on *United States v. Leon*, as the officers did not conduct a search pursuant to a warrant. *See Atkins v. Commonwealth*, 9 Va. App. 462, 464 (1990) ("Under the good faith exception [to the exclusionary rule] evidence illegally seized is admissible if the officer conducting the search reasonably relied on a search warrant issued by a detached and neutral magistrate.").