PRESENT:  Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Goodwyn, JJ., and Carrico, S.J.

TYRONE JUNIOR MCCAIN

v.  Record No. 071189                        OPINION BY
                                   JUSTICE S. BERNARD GOODWYN
COMMONWEALTH OF VIRGINIA                 April 18, 2008

          FROM THE COURT OF APPEALS OF VIRGINIA

     In this case we consider the circumstances under which a

law enforcement officer may, within the confines of the Fourth

Amendment of the United States Constitution ("the Fourth

Amendment"), conduct a "pat-down" search for weapons on a

passenger in a vehicle whose driver was stopped for a traffic

violation.

     Tyrone Junior McCain ("McCain") was charged in the

Danville Circuit Court with possession of cocaine with the

intent to distribute, possession of a firearm while possessing

cocaine with the intent to distribute, possession of a firearm

by a convicted felon, and carrying a concealed weapon.  Prior

to trial, McCain filed a motion to suppress, claiming that

evidence was seized from him in violation of his

constitutional rights.  The trial court denied the motion to

suppress, and convicted McCain on all charges.

     McCain appealed to the Court of Appeals.  In an

unpublished opinion, the Court of Appeals affirmed the

convictions. McCain v. Commonwealth, Record No. 0110-06-3 (May 8, 2007). McCain appeals.

In the early morning hours of August 9, 2005, Officer R.V. Worsham ("Worsham"), of the City of Danville Police Department, observed a vehicle ("the vehicle") parked in front of a house on Sublett's Alley in the City of Danville. The two occupants of the vehicle walked up to the house in front of which the vehicle was parked and, in less than a minute, returned to the vehicle. Worsham was familiar with the house because he was involved in a transaction "months" earlier in which an informant made a controlled purchase of cocaine there.

When the vehicle left, Worsham followed in his police vehicle. Worsham observed that the vehicle's rear license plate had a plastic border that covered the expiration date of the license plate. He intended to stop the vehicle for that reason, but "before [he] could get to it to stop it for that, it was [improperly] backing out into North Main Street." Worsham initiated a traffic stop. Worsham stopped the vehicle within sight of the house where Worsham had first seen the vehicle.

Worsham approached the vehicle and asked the driver, Kelly Hartman ("Hartman"), for her license. McCain was the

2

front seat passenger. McCain, whom Worsham already knew, identified himself truthfully. Worsham obtained Hartman's information and went back to his car to check her driver's license and to call for "back-up" assistance.

Hartman's driver's license was reported suspended. Worsham went back to the vehicle and asked McCain if he had a license, so that he could drive the vehicle without it being towed. McCain told Worsham that his license also was suspended. Because both drivers' licenses were suspended, Worsham needed to conduct an inventory of the vehicle's contents and have it towed. When Officer E.K. Thompson ("Thompson") arrived on the scene, Worsham explained to him what had occurred and asked Thompson to watch the passenger side of the vehicle while Worsham got the driver out. Worsham asked the driver to exit the vehicle. She did so and consented to a search of her person and the vehicle.

Thompson went to the passenger side of the car and asked McCain to exit the car. Thompson asked McCain if he could perform a "frisk" or "pat-down" search on McCain. Up to that point, McCain had complied with every request made by the officers. McCain declined to give Thompson permission for the search. However, Thompson ordered McCain to place his hands on the vehicle and performed a pat-down search on him.

3

Thompson testified that McCain seemed nervous as Thompson began to pat him down and that Worsham had told him that he thought McCain was "edgy." When McCain removed his hands from the car, Thompson grabbed McCain by the arm and put him back on the car and said, "Look, don't be coming off the car like that cause I take that as a sign of aggression towards me." Thompson continued the pat-down and found keys in McCain's pocket. Later during the pat-down search, Thompson asked McCain if he had any weapons on his person, and McCain said that he had a gun, at which time Thompson removed a gun from McCain's waistband and placed him under arrest. During a search incident to the arrest, Worsham discovered cocaine in McCain's pocket.

The neighborhood where the traffic stop occurred had been patrolled by Worsham for almost five years and was "known for the drugs, known for shots fired, being called [in] all the time [,] . . . probably at least once a night shift." In fact, Thompson, who also regularly patrolled the area, testified that, "for officer safety," he conducts a pat-down search of every person he interacts with in that neighborhood, whether they want him to or not. Thompson testified, "If I'm getting out for a reason to talk to somebody I would definitely pat them down for my safety." The trial court

4

found that McCain was seized for purposes of the pat-down search, but that his detention for that purpose was constitutional.

## DISCUSSION

McCain claims that he was subjected to an unlawful seizure and search and that all evidence obtained as a result thereof should have been suppressed. The Commonwealth contends that, under the circumstances, the police officer's seizure and search of McCain was constitutional.

A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review de novo on appeal. Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002); see Bolden v. Commonwealth, 263 Va. 465, 470, 561 S.E.2d 701, 704 (2002); McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001); see also Ornelas v. United States, 517 U.S. 690, 691, 699 (1996). In making such a determination, we give deference to the factual findings of the circuit court, but we independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment. Bolden, 263 Va. at 470, 561 S.E.2d at 704; McCain, 261 Va. at 490, 545 S.E.2d at 545; Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000). The defendant has

5

the burden to show that, considering the evidence in the light most favorable to the Commonwealth, the trial court's denial of his suppression motion was reversible error. Bolden, 263 Va. at 470, 561 S.E.2d at 704; McCain, 261 Va. at 490, 545 S.E.2d at 545; Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).

Whether the Fourth Amendment has been violated is a question to be determined from all the circumstances. Samson v. California, 547 U.S. 843, 848 (2006); see Ohio v. Robinette, 519 U.S. 33, 39 (1996). Review of the existence of probable cause or reasonable suspicion involves application of an objective rather than a subjective standard. Terry v. Ohio, 392 U.S. 1, 21-22 (1968); Bass, 259 Va. at 475, 525 S.E.2d at 923-24; Ewell v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 722 (1997); Zimmerman v. Commonwealth, 234 Va. 609, 611-12, 363 S.E.2d 708, 709 (1988); Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982).

Under well-settled principles of law, police officers may stop a person for the purpose of investigating possible criminal behavior even though no probable cause exists for an arrest. Terry, 392 U.S. at 22. A stop is permissible so long as the officer has reasonable, articulable suspicion that criminal activity may be afoot. United States v. Sokolow, 490

6

U.S. 1, 7 (1989). To establish reasonable suspicion, an officer must be able to articulate more than an unparticularized suspicion or "hunch" that criminal activity is afoot. Illinois v. Wardlow, 528 U.S. 119, 123-24 (2000). The character of the location and the time at which a person is observed are relevant factors, but they do not supply a particularized and objective basis for suspecting criminal activity on the part of the particular person stopped. See Brown v. Texas, 443 U.S. 47, 51-52 (1979); Wardlow, 528 U.S. at 124.

Worsham observed McCain go to a house on Sublett's Alley and return to a parked car in less than a minute. Worsham did not observe any suspected drug activity or transaction when McCain went to the house, but he was aware of a controlled purchase of drugs at the house "months" before McCain approached the house, which is in a "high drug" area.

McCain's brief presence at a house the officer associated with drug activity months prior does not support a reasonable inference of criminal activity. The record does not contain any evidence concerning the purpose of McCain's visit or any suspicious behavior during the visit. A person's Fourth Amendment rights are not lessened simply because he or she happens to live or travel in a "high crime" area. Despite the

7

neighborhood, the activity Worsham observed on Sublett's Alley was not sufficient to stop McCain because of a reasonable suspicion of criminal activity. However, Worsham did have a legitimate basis for stopping the vehicle McCain was traveling in.

An officer may effect a traffic stop when he has reasonable suspicion to believe a traffic or equipment violation has occurred. Bass, 259 Va. at 475, 525 S.E.2d at 923-24. Here, Worsham had probable cause to stop the vehicle in which McCain was riding when Worsham observed both an equipment violation and a traffic infraction. Thus, although there was no reasonable suspicion of criminal activity on the part of McCain, stopping the vehicle in which McCain was traveling was constitutionally permissible because of the traffic and equipment violations that Worsham observed.

During the course of a traffic stop, an officer may take certain steps to protect himself, such as asking the driver and any passengers to exit the vehicle. Maryland v. Wilson, 519 U.S. 408, 414-15 (1997). "[P]olice officers may also detain passengers beside an automobile until the completion of a lawful traffic stop." Harris v. Commonwealth, 27 Va. App. 554, 562, 500 S.E.2d 257, 261 (1998) (citing Hatcher v. Commonwealth, 14 Va. App. 487, 491-92, 419 S.E.2d 256, 259

8

(1992)).  An officer's authority to order an occupant from a vehicle during a traffic stop is justified by the potential risks associated with traffic investigation that implicate safety concerns.  Wilson, 519 U.S. at 413-14; see Pennsylvania v. Mimms, 434 U.S. 106, 110-11 (1977).  There was nothing constitutionally improper about Thompson asking McCain to exit the vehicle, nor was it improper to detain McCain during the traffic stop.  The resolution of McCain's motion to suppress hinges upon the constitutional propriety of subjecting McCain to a seizure and pat-down search after he exited the vehicle.

"Because a frisk or 'pat-down' is substantially more intrusive than an order to exit a vehicle, . . . an officer must have justification for a frisk or a 'pat-down' beyond the mere justification for the traffic stop."  United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998).  An officer may not automatically search a driver or his passengers pursuant to the issuance of a traffic citation or in the course of a Terry stop, but he may frisk the driver and passengers for weapons if he develops reasonable suspicion during the traffic or Terry stop to believe the particular person to be frisked is armed and dangerous.  Knowles v. Iowa, 525 U.S. 113, 117-18 (1998); see Adams v. Williams, 407 U.S. 143, 146 (1972).  "Even in high crime areas, where the possibility that any

9

given individual is armed is significant, Terry requires reasonable, individualized suspicion before a frisk for weapons can be conducted." Maryland v. Buie, 494 U.S. 325, 334 n.2 (1990).

Circumstances relevant in this analysis include characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime. See Terry, 392 U.S. at 28; Whitfield v. Commonwealth, 265 Va. 358, 362, 576 S.E.2d 463, 465 (2003). Nervousness during the course of a traffic stop, standing alone, is insufficient to justify a frisk for weapons, but "nervous, evasive behavior is a pertinent factor" for consideration in assessing the totality of the circumstances. Wardlow, 528 U.S. at 124 (citing United States v. Brignoni-Ponce, 422 U.S. 873, 885 (1975); Florida v. Rodriguez, 469 U.S. 1, 6 (1984); United States v. Sokolow, 490 U.S. at 8-9)).

Here, the circumstances establish that McCain was a passenger in a vehicle stopped for a relatively minor traffic infraction. Worsham and Thompson detained McCain solely because of the actions of the driver. Neither officer articulated a reasonable suspicion of criminal activity

10

implicating McCain, and viewing the circumstances objectively, none existed. Also, McCain's actions gave the officers no legitimate reasonable suspicion that he was armed and dangerous. Although the character of the location and the time are relevant factors, they did not provide either officer a particularized and objective basis for suspecting McCain was armed and dangerous.

Worsham may have had a hunch that McCain was involved with drugs because of the neighborhood and the house McCain visited; however, such a hunch does not rise to the level of reasonable suspicion. The officers' interaction with McCain during the traffic stop in no way supported this hunch, because the officers did not observe or notice any drugs, odor of drugs, or drug paraphernalia in the vehicle. Further, the officers did not notice any physical or mental impairment that would indicate drug use by McCain, and there were no physical or other characteristics observed by the officers that indicated McCain might be armed and dangerous. Although he may have appeared to be nervous, McCain identified himself when requested, did not make any furtive movements, and cooperated with the police officers until Thompson asked permission to do a pat-down search.

The Supreme Court's decision in Terry does not permit a generalized policy that authorizes a police officer to frisk all persons. The totality of the circumstances, namely, the time of day, the location in a "high crime" area, and the fact that Worsham had months earlier conducted a controlled cocaine purchase from the house McCain visited on Sublett's Alley, did not create reasonable suspicion sufficient to justify detaining and frisking McCain. No additional circumstances developed during the course of the traffic stop that would support a reasonable suspicion that McCain was involved in criminal activity or was armed and dangerous. Therefore, we hold that McCain was seized and frisked in violation of his rights under the Fourth Amendment, and his motion to suppress should have been granted.

Because the evidence seized from McCain should have been suppressed, there would be insufficient evidence to sustain convictions for possession of cocaine with intent to distribute and the related firearms and weapons offenses. Accordingly, we will reverse the judgment of the Court of Appeals, vacate McCain's convictions, and dismiss the indictments against him.

Reversed, vacated and dismissed.

SENIOR JUSTICE CARRICO, with whom JUSTICE KOONTZ and JUSTICE KINSER join, dissenting.

12

I agree with the majority that to justify a "pat-down search," the rule is that "the police officer must be able to point to specific and articulable facts" showing that "criminal activity may be afoot" and that the suspect "may be armed and presently dangerous." Terry v. Ohio, 392 U.S. 1, 21, 30 (1968). I do not agree, however, that in applying the rule in this case the majority has reached the correct conclusion. Accordingly, I respectfully dissent.

In my opinion, the police in this case did point to specific and articulable facts sufficient to satisfy the rule. An investigating officer "need not be absolutely certain" that criminal activity may be afoot or that the suspect may be armed and dangerous. Id. at 27. An assessment of the reasonableness of a particular search or seizure must "be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." Id. at 21-22 (quoting Carroll v. United States, 267 U.S. 132, 162 (1925)).

Here, the confrontation between the police and the defendant occurred near 3:00 a.m. in a high-crime and high-drug area of the City of Danville where the police receive reports of "shots fired . . . at least once a night shift."

13

Officer Worsham had participated months before in a controlled drug buy in the very house he saw the defendant and Kelly Hartman enter and then within one minute return to their vehicle on the night in question.

The fact that Officer Worsham did not specify the number of months the drug buy preceded the present confrontation does not, in my view, diminish the probative value of his testimony. The drug buy obviously made a lasting impression upon him; it was still fresh in his mind; and it is a relevant circumstance in an objective assessment of the reasonableness of his actions. Furthermore, Officer Thompson testified that when he arrived on the scene Officer Worsham told him before he patted down the defendant that the house "was known for selling drugs" (emphasis added), indicating that Officer Worsham had recent information that the house was a continuing site of drug activity.

The foregoing are specific and articulable facts that would, as I see the case, warrant a person of reasonable caution in the belief that criminal activity, i.e., the purchase of illicit drugs, may have been afoot on the defendant's visit to the house in question. And, because the suspected criminal activity that may have been afoot was drug related, the same facts would warrant a person of reasonable

14

caution in the belief that the defendant was armed and dangerous, posing a threat to the safety of the police officers and others. In Jones v. Commonwealth, 272 Va. 692, 636 S.E.2d 403 (2006), this Court took special note of the "attendant dangers of violence in the drug trade." Id. at 701 & n.3, 636 S.E.2d at 407 & n.3 (citing United States v. Bustos-Torres, 396 F.3d 935, 943 (8th Cir. 2005) ("it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction"), and United States v. Grogins, 163 F.3d 795, 799 (4th Cir. 1998) ("the connection between illegal drug operations and guns in our society is a tight one")).

Officer safety in the Fourth Amendment context is a subject of great concern to the courts. Indeed, it was a pivotal consideration in the approval of a "stop and frisk" rule in Terry. 392 U.S. at 10. There, the Supreme Court stated as follows:

> Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.
>
> In view of these facts, we cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims of violence in situations where

15

they may lack probable cause for an arrest. When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

392 U.S. at 23-24.

And the concern for officer safety does not change because the suspect happens to be, as the defendant was in this case, a passenger in a motor vehicle. "[T]he same weighty interest in officer safety is present regardless of whether the occupant of the stopped car is a driver or passenger." Maryland v. Wilson, 519 U.S. 408, 413 (1997). "[W]hen drugs are suspected in a vehicle and the suspicion is not readily attributable to any particular person in the vehicle, it is reasonable to conclude that all occupants of the vehicle are suspect. They are in the restricted space of the vehicle presumably by choice and presumably on a common mission." United States v. Sakyi, 160 F.3d 164, 169 (4th Cir. 1998). Finally, in Lansdown v. Commonwealth, 226 Va. 204, 308 S.E.2d 106 (1983), involving a passenger in a van occupied by several persons and driven recklessly by the driver, this Court stated as follows:

If, as we now hold, Officer Missouri was justified in believing the van's occupants might be armed, the possible

danger to the officer would have been just as great from an armed passenger as from an armed driver.  The law does not expect that a police officer must gamble on turning away from a possible danger and chance taking a bullet in the back merely because of the status of a vehicle's occupants.

Id. at 212, 308 S.E.2d at 111.

I would affirm the judgment of the Court of Appeals.