Present: Keenan, Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Lacy, S.J.

MICHAEL ANTWUAN WILLIAMS

v. Record No. 090483    OPINION BY JUSTICE DONALD W. LEMONS
                                          November 5, 2009
WARDEN OF THE SUSSEX I STATE PRISON

UPON A PETITION FOR A WRIT OF HABEAS CORPUS

Upon review of this petition for a writ of habeas corpus filed under our original jurisdiction, we consider whether the petitioner, Michael Antwuan Williams ("Williams"), is entitled to relief for his claim that he was denied his Sixth Amendment right to effective assistance of counsel. Williams claims that his counsel failed to properly appeal his case from the Court of Appeals to this Court.

I. Facts and Proceedings Below

Williams' petition for habeas corpus arises from his convictions for transporting cocaine into the Commonwealth with the intent to distribute under Code § 18.2-248.01, transporting heroin into the Commonwealth with the intent to distribute under Code § 18.2-248.01, and possession of a firearm while in possession of drugs under Code § 18.2-308.4. Prior to trial, Williams filed a motion to suppress the evidence of items seized during a traffic stop.

The only witness who testified at the hearing on the motion to suppress was Deputy Kevin Gary ("Deputy Gary") from

the Stafford County Sheriff's Department. Deputy Gary testified that as a deputy for the Stafford County Sheriff's department and in his previous employment as a "uniformed police officer" for the Central Intelligence Agency, he had experience both as the arresting officer and the backup officer on "about 25" arrests concerning possession of marijuana.

Deputy Gary testified that about "twenty minutes after one in the morning," he was driving "southbound" on Interstate Highway 95 when he noticed a "Ford Excursion" that was "driving with its interior lights on." While traveling "[a]bout 60 to 65" miles per hour, Deputy Gary testified that he "pulled up next to the vehicle" on the driver's side and that he observed a female driver and a male passenger, who was subsequently identified as Williams. He testified that Williams "was rolling what . . . appeared to [Deputy Gary] to be a marijuana cigarette." When asked why he reached that conclusion, Deputy Gary testified that the passenger "had one hand slightly cupped. There was something in his hand, and he was pouring it – pouring something out of a bag into it, into his cupped hand. [The passenger] then proceeded to roll the end of the cigarette and then light it." Deputy Gary also testified that he had "family members who work on tobacco farms who roll personally" and that a tobacco cigarette is

2

"not rolled the same, and it doesn't look the same." Later during cross-examination, Deputy Gary testified, "in the time [he had] been with the Sheriff's Office, [he had] yet to come across one that was rolled that wasn't a marijuana cigarette" and that based on his experience and training he had a "suspicion" that the passenger was rolling a marijuana cigarette.

Deputy Gary activated his "emergency equipment to stop the vehicle." When the vehicle was stopped, Deputy Gary approached the vehicle and "could smell the odor of marijuana coming from the vehicle and the smoke exiting the vehicle from the rolled-down window."

After obtaining information from the driver, Deputy Gary testified that he moved to the passenger side of the vehicle because based on what he saw, he believed Williams had been in possession of marijuana. Deputy Gary asked Williams to step out of the vehicle. When Williams complied, Deputy Gary noticed "two little red plastic baggies that fell from under [Williams'] leg to the floorboard of the truck." Deputy Gary stated that the baggies contained a substance that "appeared to be marijuana," and he placed Williams under arrest for "possession of marijuana" and then conducted a search incident to arrest of both Williams and the vehicle.

In searching Williams, Deputy Gary testified he "found a very large quantity of cash in two different pockets . . . one quantity, [he] believe[d], was a thousand dollars, the other one was approximately eighteen hundred dollars" and also "a sandwich baggy" of what "appeared to be cocaine." During the search of the vehicle, Deputy Gary testified he found a "black plastic bag with a kind of nylon/canvas style bag inside of it" in the backseat of the vehicle on the passenger side. Deputy Gary testified that he "found a very large quantity of money inside [the] canvas bag," "a loaded .357 caliber revolver," and "two Ziploc sandwich baggies [] with a very hard substance in them," that was later confirmed to be heroin.

The motion to suppress was denied and at trial, Williams was convicted and sentenced to 25 years imprisonment for transporting cocaine into the Commonwealth, 25 years imprisonment for transporting heroin, and five years imprisonment for possession of firearm while in possession of drugs for a total of 55 years imprisonment.

Williams appealed his convictions to the Court of Appeals, which affirmed the judgment of the trial court. In an unpublished opinion, the Court of Appeals decided Williams' case based solely on the issue of Williams' standing as a passenger to challenge the stop of the vehicle. The Court of

Appeals did not consider whether there was reasonable articulable suspicion to justify the stop. Williams v. Commonwealth, Record No. 2217-04-4 (June 20, 2006). In a footnote the Court of Appeals stated, "no appeal was ever granted by this Court on [the validity of the stop] issue. The appeal was granted on the issue of standing alone." Id. at 8 n.3.

We awarded Williams an appeal from the Court of Appeals and recited the procedural posture in an unpublished order. Williams v. Commonwealth, Record No. 071504 (March 14, 2008). We dismissed Williams' appeal as improvidently granted. Id. We held that based on the United States Supreme Court case Bendlin v. California, 551 U.S. 249 (2007), Williams had standing to challenge the validity of the stop. Williams, Record No. 071504 slip op. at 2. However, we also held that while

> Williams assigned error in this Court to the trial court's holding that the stop was valid, we cannot address that assignment of error. The Court of Appeals held that the validity of the stop was not an issue on appeal before that court and Williams did not assign error to that holding.

Id. Therefore, we dismissed Williams' appeal without addressing the validity of the stop. Id.

Williams now brings a petition for writ of habeas corpus alleging:

I.  Petitioner was denied his Constitutional Right to Effective Assistance of Counsel pursuant to Sixth Amendment of the United States Constitution which is applicable to the Commonwealth by virtue of the Fourteenth Amendment.

  A.  Counsel's Failure to Properly Appeal Petitioner's Case from the Court of Appeals to the Supreme Court Deprived the Petitioner of His Appellate Due Process Rights and Effectively Deprived Him of His Sixth Amendment Right to Effective Assistance of Counsel.

## II.  Analysis

Williams argues that had his counsel properly appealed the validity of the traffic stop, there would have been "a reasonable probability especially in consideration of the . . . dissenting opinion in the Court of Appeals" that this Court would have held that the officer "lacked the reasonable suspicion necessary to stop, detain and search" him.

Under the analysis required by Strickland v. Washington, 466 U.S. 668 (1984),

First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from

6

a breakdown in the adversary process that renders the result unreliable.

Powell v. Warden, 272 Va. 217, 229, 634 S.E.2d 289, 294-95 (2006) (citing Strickland, 466 U.S. at 687) (quotation marks omitted). Nonetheless,

> [a] reviewing court, however, is not required to determine whether "counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

Lewis v. Warden, 274 Va. 93, 113, 645 S.E.2d 492, 504 (2007); see also Yarbrough v. Warden, 269 Va. 184, 197, 609 S.E.2d 30, 37 (2005); Lovitt v. Warden, 266 Va. 216, 250, 585 S.E.2d 801, 821 (2003).

Accordingly, we will address whether Williams satisfies Strickland's requirement that he was prejudiced by the alleged inadequacies of counsel. Williams must demonstrate that, but for counsel's failure to assign error on appeal to the validity of the stop, there is a reasonable probability that the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

It is well-established that

> [w]hen the police stop a motor vehicle and detain an occupant, this constitutes a "seizure" of the person for Fourth Amendment purposes,

7

> even though the function of the stop is limited and the detention brief. Leeth v. Commonwealth, 223 Va. 335, 340, 288 S.E.2d 475, 478 (1982), citing Delaware v. Prouse, 440 U.S. 648, 653 (1979).

Zimmerman v. Commonwealth, 234 Va. 609, 611, 363 S.E.2d 708, 709 (1988).

> Under well-settled principles of law, police officers may stop a person for the purpose of investigating possible criminal behavior even though no probable cause exists for an arrest. A stop is permissible so long as the officer has reasonable, articulable suspicion that criminal activity may be afoot.

McCain v. Commonwealth, 275 Va. 546, 552, 659 S.E.2d 512, 516 (2008) (citing Terry v. Ohio, 392 U.S. 1, 22 (1968); United States v. Sokolow, 490 U.S. 1, 7 (1989)). "Review of the existence of . . . reasonable suspicion involves application of an objective rather than a subjective standard." McCain, 275 Va. at 552, 659 S.E.2d at 516 (citing Terry, 392 U.S. at 21-22).

Here, Deputy Gary observed that the interior light was on in the vehicle in question, and he saw Williams "[h]ad one hand slightly cupped. There was something in his hand, and he was pouring it – pouring something out of a bag into it, into his cupped hand. [Williams] then proceeded to roll the end of the cigarette and then light it." Deputy Gary also articulated that from what he saw, and based on his experience and training, he had a "suspicion" that the passenger was

8

rolling a marijuana cigarette.  Considering the evidence in its totality, Deputy Gary had reasonable articulable suspicion to stop Williams' vehicle because Deputy Gary was able to articulate more than a "'hunch' that criminal activity was afoot."  McCain, 275 Va. at 552, 659 S.E.2d at 516.

In Buhrman v. Commonwealth, 275 Va. 501, 659 S.E.2d 325 (2008), we held that possession of a hand-rolled cigarette, without more, is insufficient to establish probable cause for arrest.  Id. at 506, 659 S.E.2d at 328.  However, here we are addressing reasonable articulable suspicion for a traffic stop. Furthermore, once Deputy Gary stopped Williams, he approached Williams' vehicle, "got near the vehicle," and he "could smell the odor of marijuana coming from the vehicle and the smoke exiting the vehicle from the rolled-down window."  When Deputy Gary smelled the odor of marijuana, after seeing what he thought was a marijuana cigarette in Williams' possession, he had probable cause to arrest and search Williams and the vehicle.  United States v. Johns, 469 U.S. 478, 482 (1985) ("After the officers came closer and detected the distinct odor of marihuana, they had probable cause to believe that the vehicles contained contraband").

Upon review of the evidence, it is clear that Deputy Gary had reasonable articulable suspicion to stop Williams which ripened into probable cause to arrest and search.  Even if

Williams' counsel had properly appealed the issue of the validity of the stop, the result of Williams' appeal would have been the same.  We hold that Williams has not borne his burden of demonstrating prejudice under the requirements of Strickland, 466 U.S. at 694.

### III.  Conclusion

For the reasons stated, we will deny Williams' petition for the issuance of a writ of habeas corpus.

Denied.

10