COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Fulton and Lorish

TREVON JEREEN MCRAE

                                     MEMORANDUM OPINION[*]
v.      Record No. 1916-23-1                     PER CURIAM
                                       NOVEMBER 19, 2024
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

(J. Barry McCracken, Assistant Public Defender, on brief), for
appellant.

(Jason S. Miyares, Attorney General; Justin B. Hill, Assistant
Attorney General, on brief), for appellee.

The trial court convicted Trevon Jereen McRae on his conditional guilty pleas of carrying

a loaded firearm and possession of a Schedule I or II controlled substance. On appeal, he argues

that the trial court erred by denying his motion to suppress his statements and the "evidence

derived therefrom." After examining the briefs and record here, the panel unanimously holds that

oral argument is unnecessary because "the appeal is wholly without merit," and we affirm the trial

court's decision to deny the motion to suppress. Code § 17.1-403(ii)(a); *see also* Rule 5A:27(a).

BACKGROUND

While on uniform patrol in the City of Norfolk in a marked police vehicle at night,

Norfolk Police Officer Darren Labat saw a red Honda sedan drive past him without a visible

license plate. The driver, Trevon McRae, parked the car in front of a residence. Officer Labat

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

drove up to the parked car[1] and walked over to the driver's side.  Noticing the officer, McRae rolled down the window.  Within seconds of greeting McRae, Officer Labat recognized "the last approximately inch of a brace or a stock that appeared to belong to either an AR pistol or a short-barreled rifle that was protruding just above [McRae's] right knee."  Officer Labat also noticed that the barrel was on the floorboard and the stock was resting against the center console.  Officer Labat immediately asked him, "[Y]ou want to step out just so we don't have to worry about that?"  Officer Labat clarified, "[T]hat gun next to you."  Along with the firearm, Officer Labat observed an open bottle of Heineken, a couple of red solo cups in the cupholder in the front seat, and a woman seated in the passenger's seat.

At that point, McRae asked what the problem was.  Officer Labat told him, "[Y]ou don't have any front tags."[2]  McRae and his passenger pointed the officer to the bottom right-hand corner of the windshield, where the license plate was located.  Officer Labat responded, "It's not where it's supposed to [be]."  Officer Labat testified that he initially believed the vehicle did not have a tag because the plate was not on the front bumper, but when he approached the vehicle, he could see that the vehicle did have a tag located in the front windshield.  He testified that he still believed McRae to have committed a traffic violation because the plate had to be visible and Officer Labat could not read it or see it in the front windshield since it was "inside the window, slanted at an angle, and sort of down on the bottom edge of the dash."

McRae stepped out of the vehicle.  Officer Labat also asked the passenger to step out of the vehicle so that nobody was near the gun.  When McRae stepped out of the vehicle, Officer

---

[1] Officer Labat did not recall whether his lights were activated.

[2] At the hearing on the motion to suppress, Officer Labat testified that he responded to McRae's question about why he was being stopped because of both the firearm and the front tags.  The body camera footage shows that Officer Labat only responded that McRae lacked front tags.

Labat saw that the firearm was equipped with a 30-round magazine. Officer Labat then walked over to the driver's side of McRae's vehicle and shone a flashlight onto the seat where the gun was lying. After peering at the gun, Officer Labat asked McRae if he had a concealed weapons permit, to which McRae responded in the negative. Officer Labat searched the front seat and the center console of the vehicle, where he found marijuana, a clear large mason jar containing a large bag of white rocklike substances, and several small red glassine baggies containing smaller quantities of a similar substance. Lab testing later showed that these substances were cocaine. He also found folded money and a black digital scale on the driver floorboard next to the firearm.

McRae was arrested, and the vehicle was taken to the Norfolk Police for an inventory search. He was indicted for possession of a Schedule I/II substance with intent to distribute, possession of a firearm while in possession of a Schedule I/II substance with intent to distribute, possession of a concealed weapon, and carrying a loaded firearm with a magazine containing more than 20 rounds in public.

McRae moved to suppress his statements and the "evidence derived therefrom." He advanced two arguments. First, McRae argued that the officers lacked reasonable suspicion to stop his car because Code § 46.2-715 does not require license plates to be affixed to the front bumper; rather, they "shall be attached to the front and the rear end of the vehicle." Because McRae's plate was attached to the windshield, it was "attached to the front," and complied with the law. Second, McRae argued that even if the traffic stop was justified, the officer impermissibly extended the stop by investigating the firearm. McRae argued that the officer's only permissible action was to investigate the license plate issue and that any inquiry into the weapon in the vehicle was not incident to the traffic stop, and therefore violated the Fourth Amendment.

In response, the Commonwealth argued that the encounter between Officer Labat and McRae was consensual because the officer made no show of authority to McRae and because Officer Labat did not stop the vehicle—the vehicle was parked, Officer Labat approached, and McRae voluntarily rolled down the window. In the alternative, the Commonwealth argued that even if the encounter was a "traffic stop," it was justified because, although the license plate was on the front of the vehicle, it was not visible to the officer. Furthermore, the extension of the stop was justified because Officer Labat noticed a partially concealed weapon in plain view, which justified his request for McRae to exit the vehicle and to secure any weapons. The Commonwealth also argued that there was probable cause for arrest once McRae stated he did not have a concealed weapons permit. The officer obtained additional probable cause to arrest McRae and search the area where he was seated once he noticed that the weapon contained a 30-round magazine. Finally, the Commonwealth argued that the drugs would have been found under the inevitable discovery doctrine because an inventory search would have been conducted either way.

In rebuttal, defense counsel "correct[ed]" the Commonwealth that the search started before Officer Labat had information about whether McRae had a permit to carry a concealed weapon because Officer Labat went into the vehicle with a flashlight before asking McRae about the permit.

The court took the motion to suppress under advisement and later denied it without making any factual findings. McRae entered a conditional guilty plea under Code § 19.2-254 to possession with intent to distribute a Schedule I or II controlled substance in violation of Code § 18.2-248 and carrying a loaded firearm in violation of Code § 18.2-287.4. The other two charges were nolle prossed.

On appeal, McRae makes the same two arguments he made at the suppression hearing, and adds a third: he argues that the trial court erred in denying his motion to suppress because "the police officer neither had probable cause to search the vehicle predicated on the observation of a suspected firearm that was possessed in violation of either Virginia Code § 18.2-308(A) or 18.2-287.4 nor was the search justified as a search incident to arrest for any offense."

ANALYSIS

A trial court's ruling on a motion to suppress "presents a mixed question of law and fact that we review de novo on appeal." *Murphy v. Commonwealth*, 264 Va. 568, 573 (2002). If the trial court made factual findings, we defer to those findings unless "plainly wrong or without evidence to support them." *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020) (quoting *Matthews v. Commonwealth*, 65 Va. App. 334, 341 (2015)). Although the trial court is not required to make explicit factual findings, to the extent it does not make such findings, we review the evidence in the light most favorable to the prevailing party below and accord that party "the benefit of all reasonable inferences fairly deducible from that evidence." *Gregory v. Commonwealth*, 64 Va. App. 87, 93 (2014).

I. The officer had reasonable suspicion to initiate the stop of McRae's vehicle.

"The Fourth Amendment protects individuals against unreasonable searches and seizures." *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019). "A traffic stop is a "'seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment.'" *Id.* (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). "To justify the traffic stop, an officer must have reasonable suspicion that the person stopped committed a crime or traffic violation." *Id.* Reasonable suspicion is "more than an unparticularized suspicion or 'hunch'" that a violation of the law was occurring. *McCain v. Commonwealth*, 275 Va. 546, 552 (2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). Yet, it requires "'considerably

less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Bland v. Commonwealth*, 66 Va. App. 405, 413 (2016) (quoting *Navarette v. California*, 572 U.S. 393, 397 (2014)). Significantly, reasonable suspicion "must be based upon specific and articulable facts." *Joyce v. Commonwealth*, 72 Va. App. 9, 14 (2020) (quoting *Mason v. Commonwealth*, 291 Va. 362, 368 (2016)). The test is "whether the facts and circumstances apparent to him at the time of the stop . . . create[d] in the mind of a reasonable officer in the same position that a violation of the law was occurring or was about to occur." *Id.*

Importantly, "reasonable suspicion can rest on a mistaken understanding of the scope of a legal prohibition." *Jones*, 71 Va. App. at 381 (quoting *Heien*, 574 U.S. at 60). "But '[t]he Fourth Amendment tolerates only reasonable mistakes, and those mistakes—whether of fact or of law—must be objectively reasonable.'" *Id.* (alteration in original) (emphases omitted) (quoting *Heien*, 574 U.S. at 66). When a statute is "genuinely ambiguous," the officer has made a reasonable mistake of law that would support a finding of reasonable suspicion. *Heien*, 574 U.S. at 70. Conversely, when "there is no ambiguity or conflict in the statutes that would justify [a] mistake of law," the mistake is not reasonable. *Jones*, 71 Va. App. at 382.

McRae argues that the initial basis for the traffic stop, "Labat's belief that the Appellant was operating his vehicle without a properly displayed license plate on the front of the vehicle," was not supported by reasonable suspicion. Code § 46.2-715 states that "license plates assigned to a motor vehicle . . . shall be attached to the front and the rear end of the vehicle," but does not require a license plate to be affixed to the front bumper. Code § 46.2-716(A)(2) and (3) require that "[e]very license plate shall be securely fastened to the motor vehicle, trailer, or semitrailer to which it is assigned . . . in a position to be clearly visible, and . . . in a condition to be clearly legible."

We disagree with McRae that the officer did not possess reasonable suspicion to initiate the stop.[3] Officer Labat saw a vehicle drive past him without a visible license plate. While Officer Labat initially believed that the plate had to be located on the front bumper, he also testified that he knew that the plate had to be visible and that he could not see or read it where it was in the front windshield because it was "inside the window, slanted at an angle, and sort of down on the bottom edge of the dash." We need not decide whether his mistake about where the plate needed to be attached was reasonable because he made no mistake of law in finding that McRae committed a traffic violation in failing to display his license plate in a way that was "clearly visible" and "legible." Code § 46.2-716(A)(2), (3). Because Officer Labat properly based his decision to approach the car on articulable facts that suggested McRae had committed a traffic violation, we find that reasonable suspicion supported the stop.

II. The officer lawfully extended the stop upon noticing the partially concealed firearm.

McRae next contends that the officer impermissibly extended the stop by inquiring into the presence of the gun. He concedes that "the officer was fully justified in removing the occupants of the vehicle for safety concerns as part of a routine traffic stop,"[4] but argues that "once that was accomplished, [the officer] neither had probable cause or a reasonable and articulable suspicion of criminal conduct to justify detaining the Appellant beyond the ongoing

---

[3] Because we find that the officer had reasonable suspicion to approach the car, we do not address the Commonwealth's argument that the encounter was consensual. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

[4] Contradicting this assertion, McRae elsewhere argues that the mere presence of the firearm was not sufficient to support reasonable suspicion here and that the officer needed more than the firearm to have a reasonable articulable suspicion that McRae or his female passenger posed a danger to the officer sufficient to justify their detention. Because we determine that the gun the officer saw in plain view gave him independent reason to investigate whether the gun was illegal, we do not address whether the officer had a reasonable belief that McRae or his passenger were dangerous.

traffic investigation." McRae concludes that "Labat extended the traffic stop well beyond any reasonable conclusion to pursue an unrelated investigation which was not supported by a reasonable and articulable suspicion."

As McRae acknowledges, "[d]uring the course of a traffic stop, an officer may take certain steps to protect himself, such as asking the driver and any passengers to exit the vehicle." *McCain*, 275 Va. at 553. "[P]olice officers may also detain passengers beside an automobile until the completion of a lawful traffic stop." *Id.* (alteration in original) (quoting *Harris v. Commonwealth*, 27 Va. App. 554, 562 (1998)). "An officer's authority to order an occupant from a vehicle during a traffic stop is justified by the potential risks associated with traffic investigation that implicate safety concerns." *Id.* The presence of a weapon increases these safety concerns. An officer may also seize firearms in plain view "when those firearms pose[] a potential threat to officer safety." *Williams*, 71 Va. App. at 476 (quoting *Moore v. Commonwealth*, 69 Va. App. 30, 38 (2018)). Indeed, the Fourth Circuit has noted that "the risk of danger is created simply because the person, who was forcibly stopped, is armed," "regardless of whether the person may legally be entitled to carry the firearm." *United States v. Robinson*, 846 F.3d 694, 695, 700 (4th Cir. 2017).

Additionally, while an officer may not "conduct certain unrelated checks during an otherwise lawful traffic stop" when it "prolongs the stop," *Williams*, 71 Va. App. at 482 (quoting *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)), an officer may extend a stop when he develops reasonable suspicion for a different crime, *id.* ("If an officer develops independent reasonable suspicion or probable cause that an occupant has committed an additional traffic offense or crime, the officer may extend the stop for a reasonable amount of time in order to confirm or dispel that new suspicion.").

Within seconds of McRae rolling down the driver's side window, Officer Labat recognized in plain view "the last approximately inch of a brace or a stock that appeared to belong to either an AR pistol or a short-barreled rifle that was protruding just above [McRae's] right knee." Carrying a concealed weapon is unlawful unless one has a concealed carry permit. *See* Code § 18.2-308(A) (making it a misdemeanor to carry a firearm "hidden from common observation" such that "it is observable but is of such deceptive appearance as to disguise the weapon's true nature" without a valid concealed handgun permit). Officer Labat was justified in extending the stop to "confirm or dispel" the suspicion that McRae possessed the concealed weapon unlawfully. *Williams*, 71 Va. App. at 482.[5] Furthermore, seeking to isolate the weapon so that it was not in reach of either McRae or his passenger, Officer Labat was also justified in asking McRae and his passenger to step out of the car. Finally, Officer Labat testified that when McRae stepped out of the car, he noticed that the gun was equipped with a 30-round magazine, which is illegal to possess unless the owner has a valid concealed handgun permit. *See* Code § 18.2-287.4 (making it unlawful to carry a loaded firearm that is "equipped at the time of the offense with a magazine that will hold more than 20 rounds of ammunition" without a concealed handgun permit). The fact that Officer Labat did not know whether McRae had a concealed carry permit at this point does not diminish the reasonableness of asking him to step outside the car for further investigation.[6]

---

[5] We have found that an officer had probable cause to believe an individual was carrying a concealed weapon in violation of Code § 18.2-308 when only "a 'couple of inches' of the butt of the handgun protrude[d] from [his] pocket [and] the rest . . . was completely hidden." *Slayton v. Commonwealth*, 41 Va. App. 101, 106 (2003).

[6] Under our caselaw, an officer does not even need to know whether a suspect has a valid concealed carry permit before arresting a suspect for a concealed weapons charge. *See Whitaker v. Commonwealth*, 279 Va. 268, 278 (2010) (holding that "[t]he fact that [the defendant] might not have been convicted on [a] concealed weapons charge . . . on a showing he had a permit d[id] not affect the viability of the probable cause to arrest [him for the offense] in the first instance").

We conclude that Officer Labat's observation of the firearm gave him a basis to extend the stop for a reasonable amount of time to determine whether McRae was in lawful possession of the loaded weapon. Thus, the trial court did not err in denying the motion to suppress.

III. McRae's final assignment of error is waived.

For the first time on appeal, McRae argues that the police officer did not have probable cause to search the vehicle predicated on the observation of a suspected firearm that was possessed in violation of either Code §§ 18.2-308(A) or 18.2-287.4 and that the search was not justified as a search incident to arrest for any offense. However, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. McRae failed to raise in either his written motion to suppress, or at the hearing on the motion to suppress to the trial court, whether Officer Labat had probable cause to search the vehicle and whether the search could be justified as a search incident to arrest. He also does not ask us to apply the ends of justice exception to Rule 5A:18, "and we will not invoke [it] *sua sponte*." *Arrington v. Commonwealth*, 53 Va. App. 635, 642 n.7 (2009). We therefore find that his final assignment of error is waived and do not reach it.

CONCLUSION

In sum, the trial court did not err by denying McRae's motion to suppress the firearm and the drugs that were found in his vehicle. Officer Labat possessed reasonable suspicion to initiate a traffic stop because McRae's license plate was not visible. He then garnered additional reasonable suspicion sufficient to extend the stop based on his observation that McRae possessed a concealed weapon equipped with a magazine that holds more than 20 rounds of ammunition. Accordingly, the circuit court's judgment is affirmed.

*Affirmed.*