# COURT OF APPEALS OF VIRGINIA

**Record No. 2141-24-2**

TYERRE RICKELLE ROBINSON

v.

COMMONWEALTH OF VIRGINIA

Present: Judges Beales, O'Brien and Ortiz

Argued at Richmond, Virginia

Opinion Issued May 5, 2026[*]

## FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard Strouse Wallerstein, Jr., Judge

John W. Parsons (John W. Parsons, Attorney at Law, on brief), for appellant.

Andrew T. Hull, Assistant Attorney General (Jason S. Miyares,[1] Attorney General, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE DANIEL E. ORTIZ

A jury convicted Tyerre Rickelle Robinson of possession of a firearm while illegally possessing a Schedule II controlled substance in violation of Code § 18.2-308.4(C), and with possession of cocaine, a Schedule II controlled substance, with the intent to sell, give, or distribute the cocaine in violation of Code § 18.2-248(C). The trial court sentenced Robinson to a total of 30 years of incarceration, with 15 years suspended. Robinson contends that the evidence seized in the search of his car violated the Fourth Amendment and should have been suppressed. He also asserts

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

that the cocaine he possessed was for personal use rather than for distribution. Finding no error, we affirm the trial court's judgment.[2]

BACKGROUND[3]

On June 27, 2023, Officer Ebel of the Henrico County Police Department conducted surveillance and crime reduction efforts in the Audubon Village apartment complex. Officer Ebel noticed Robinson walking out to a vehicle with various items and observed him for ten minutes. At first, the officer did not see a firearm on Robinson's person. Then, Robinson entered a vehicle and emerged with a firearm tucked into the waistband on his right hip, and Officer Ebel, using binoculars, could see "the entire grip of the firearm, the magazine well, and the back of the slide." Upon running the license plate through the DMV database, Officer Ebel learned that the vehicle was registered to Robinson. He also searched "Darwin," an internal police database which revealed that Robinson was a felon and had previously pleaded guilty to manslaughter and possession of a firearm by a convicted felon.

After, Officer Ebel radioed for assistance in detaining Robinson. He advised the other officers that he had determined that Robinson was a convicted felon and that he had observed Robinson in possession of a firearm. He then saw Robinson return to the vehicle and, after sitting in the car for some time, reemerge without the firearm on his person. This led Officer Ebel to suspect that Robinson left the firearm in the vehicle. This time, when Robinson began to walk away from

---

[2] Robinson withdrew his third assignment of error.

[3] On appeal, this Court "review[s] the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court." *Newsome v. Commonwealth*, 81 Va. App. 43, 50-51 (2024). "That principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'" *Diaz v. Commonwealth*, 80 Va. App. 286, 295 (2024) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc)).

the vehicle, the additional officers arrived and detained him. Officer Murray placed Robinson in handcuffs and conducted a pat down which failed to turn up a firearm.

Officer Hines, read Robinson his *Miranda*[4] rights, asked him whether there was a firearm in the vehicle, and informed Robinson that he would be subject to arrest if he had any contraband in the vehicle. Officer Hines then retrieved the keys to the vehicle from Robinson. Officer McCarthy arrived and conducted a search of the vehicle's passenger compartment. He performed this "protective sweep . . . to confirm or deny" the presence of a firearm in the vehicle. As he later testified, he decided to conduct the protective sweep "[g]iven the nature of the area we're in, it's a high crime area, high volume area; there were multiple shootings in the area in weeks prior to our interaction there, as well as the suspect's history that was given to us over the radio."

Officer McCarthy then recovered a handgun from the center console of the vehicle. According to Officer Hines, Robinson stated that while he knew the firearm was present in the vehicle, it did not belong to him. The police also recovered a digital scale bearing cocaine residue and a large sandwich bag containing 17.7 grams of cocaine from the vehicle. Robinson told Officer Hines that he believed the white powder in the baggie to be a stool softener. Robinson was then arrested. At the time of the arrest, Robinson had two cellphones. Officer Hines obtained a search warrant for the cellphones and provided them to the forensics unit.

Robinson moved to suppress the evidence, arguing that the officers violated his Fourth Amendment rights by searching the vehicle after he had been detained and placed in handcuffs. Robinson alleged that because he and the vehicle were secure there were no exigent circumstances permitting the police to search the vehicle without a warrant. The Commonwealth responded that given the totality of the circumstances it was proper to detain Robinson and perform a protective sweep of the defendant's vehicle for the officer's safety. At the suppression hearing, the court

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

denied the motion to suppress finding that the protective sweep did not violate the Fourth Amendment. The court concluded that Robinson "was not under arrest at the time of the search of the passenger compartment of the vehicle, notwithstanding the fact that the vehicle was locked, and the keys were removed from Mr. Robinson's person," instead he was "being detained." And "if the vehicle were not searched based upon the history of Mr. Robinson, coupled with the area, the Court would find that the safety to the officers and potentially the community was at risk."

At trial, Officers Ebel, Hines, and McCarthy testified as to the facts set forth above. Officer McCarthy testified that in addition to discovering a firearm, he also found a plastic baggie containing white powder and a digital scale with white powder residue on it. Testing confirmed that the white powder in the baggie was 17.78 grams of cocaine and that there was cocaine residue on the digital scale. The parties stipulated that the nine-millimeter handgun was loaded and would have been operable and in good mechanical condition capable of firing the ammunition it contained.

Detective Winter of the Henrico County Police Department testified as an expert witness, stating that there were numerous factors indicating that Robinson possessed the cocaine for distribution rather than personal use. Specifically, he testified that the quantity of cocaine found in the vehicle had a street value of around $750 to $800. According to Detective Winter, possession of such a large amount of cocaine would be inconsistent with personal use, even for a heavy user. Rather, the detective believed the amount to be more consistent with a "stash bag" from which a dealer could repackage and distribute cocaine to buyers. In addition, Detective Winter explained that cocaine distributors sometimes add certain cutting agents, like Miralax and other stool softeners, to increase the weight of the cocaine. However, according to Detective Winter, in his 16 years of experience, he has not seen an individual in possession of a baggie full solely of laxatives in powder form.

Next, Detective Winter reviewed the text messages recovered from Robinson's cellphones. One text message discussed "a pool," typically a reference to a "pool ball" or "eight ball." Detective Winter explained that this is usually a way of describing an eighth of an ounce, or 3.5 grams, of a substance. Another set of messages referred to "halftime software." This, according to Detective Winter, was in reference to half a gram of cocaine, as the word "soft" typically applies to powder cocaine in these contexts. Additional messages showed a conversation about arranging payment for drugs. Another individual texted Robinson asking for a "teenager," meaning one-sixteenth of an ounce, or 1.7 grams.

Following Detective Winter's testimony, the Commonwealth rested, and Robinson moved to strike the evidence. The trial court denied Robinson's motion to strike based on the quantity of the cocaine, the cellphone messages, the expert testimony, and the presence of a digital scale with cocaine residue and a firearm. Robinson did not call any witnesses and did not testify. The jury returned guilty verdicts on all charges. Robinson timely noticed his appeal.

STANDARD OF REVIEW

In reviewing the denial of a motion to suppress, we "consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial." *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). "It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." *Id.*; *see Whitfield v. Commonwealth*, 265 Va. 358, 361 (2003) (explaining that while the Commonwealth has the burden of proving the legitimacy of a warrantless search and seizure in the trial court, on appeal the defendant must show that the trial court's denial of his suppression motion constituted reversible error).

"We review de novo the trial court's application of the law to the particular facts of the case." *Bazemore v. Commonwealth*, 82 Va. App. 478, 490 (2024) (quoting *Branham v.*

*Commonwealth*, 283 Va. 273, 279 (2012)). "When considering whether to affirm the denial of a pretrial suppression motion, an appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." *Id.* at 491 (quoting *Commonwealth v. White*, 293 Va. 411, 414 (2017)). An appellate court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 490-91 (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is, upon review of the evidence in the light most favorable to the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Pijor*, 294 Va. at 512).

## ANALYSIS

I. The Trial Court Correctly Held that the Officers Did Not Violate Robinson's Fourth Amendment Rights by Performing a Protective Sweep of His Vehicle

The Fourth Amendment provides "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, a person in lawful possession of an automobile has a right to privacy in that vehicle. *Bagley v. Commonwealth*, 73 Va. App. 1, 13 (2021). Nevertheless, a vehicle sweep "is

permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Bazemore*, 82 Va. App. at 492 (quoting *Michigan v. Long*, 463 U.S. 1032, 1049 (1983)). The sole justification for a protective sweep is "the protection of police officers and others nearby." *Bagley*, 73 Va. App. at 13. "To establish reasonable suspicion, an officer must be able to articulate more than an unparticularized suspicion or 'hunch' that criminal activity is afoot." *Bazemore*, 82 Va. App. at 492 (quoting *McCain v. Commonwealth*, 275 Va. 546, 552 (2008)). The officer must "supply a particularized and objective basis for suspecting criminal activity on the part of the particular person stopped." *Id.*

Here, Robinson argues that, even viewing the facts in the light most favorable to the Commonwealth, the trial court committed reversible error in denying his motion to suppress. We disagree. As the trial court recognized, the protective sweep was justified because the police possessed a reasonable belief based on "specific and articulable facts" that Robinson had access to a firearm either on his person or in his vehicle. The record reflects that Officer Ebel observed Robinson, a convicted felon, enter his car with a firearm at his hip and exit without the gun. When a pat down of Robinson failed to reveal a firearm, the officers "rational[ly] infer[red]," *Bazemore*, 82 Va. App. at 492, that the firearm was in the vehicle and Robinson would be able to access the weapon upon release. Other factors further supported the protective sweep. Officer Ebel testified that he was only present at the apartment complex as part of a crime reduction unit in the wake of multiple shootings. And Officer Hines indicated that during the stop, other residents came outside and were "slowly building what appeared to be a scene." Given the totality of circumstances, Robinson failed to demonstrate that the police lacked the reasonable suspicion necessary to justify a protective sweep of his vehicle.

Next, Robinson argues that he could not have represented a danger to the officers at the time of the search because he was "legally detained and not free to leave." This argument misses the mark. "A vehicle sweep justified by officer safety concerns is permissible if it occurs during an investigatory detention that falls short of an arrest." *Bagley*, 73 Va. App. at 14 (emphasis omitted). "Such a protective search is authorized even if the suspect is under police restraint at the time the search is conducted, because the suspect may be able to escape such restraint." *Bazemore*, 82 Va. App. at 492 (quoting *Gross v. Commonwealth*, 79 Va. App. 530, 537 (2024)). Indeed, "the officer remains particularly vulnerable in part because a full custodial arrest has not been effected." *Bagley*, 73 Va. App. at 15 (emphasis omitted) (quoting *Long*, 463 U.S. at 1052). And a suspect "may later regain access to the vehicle if he is not arrested." *Bazemore*, 82 Va. App. at 492.

Although the police had placed Robinson in handcuffs prior to the sweep of his vehicle, the trial court did not err characterizing the stop as a detention rather than an arrest. Officer Hines informed Robinson that he would only be arrested if the police found contraband in the vehicle. That Robinson complied with police instructions during the stop is irrelevant. The justification for a protective sweep is the officers' safety once the suspect is released. In this case, once the stop ended, Robinson would have access to his car and any weapons inside. Thus, we affirm the trial court's decision to deny Robinson's motion to suppress.

II. The Trial Court Was Not Plainly Wrong in Finding that the Evidence Was Sufficient to Prove that Robinson Possessed Cocaine with Intent to Distribute

"The quantum of evidence necessary to prove an intent to distribute depends on the facts and circumstances of each case." *Askew v. Commonwealth*, 40 Va. App. 104, 110 (2003). Absent a direct admission by the defendant, "intent to distribute must necessarily be proved by circumstantial evidence." *Cole v. Commonwealth*, 294 Va. 342, 361 (2017) (quoting *Williams v. Commonwealth*, 278 Va. 190, 194 (2009)). Circumstantial evidence that may be probative of

intent includes: "'the quantity of the drugs seized, [how the drugs] are packaged, . . . the presence of an unusual amount of cash, [the presence of] equipment related to drug distribution, or firearms,' and whether the quantity of drugs [is] 'inconsistent with personal use.'" *Cole v. Commonwealth*, 294 Va. 342, 361 (2017) (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)). The Commonwealth "may introduce opinion testimony from law enforcement officers familiar with the habits and propensities of local drug users as to what amounts are inconsistent with personal use." *Askew*, 40 Va. App. at 110 (affirming the judgment of the trial court where defendant was in possession of over 7 grams of cocaine and an expert testified that such amount was inconsistent with personal use).

Here, the trial court's decision denying Robinson's motion to strike was not "plainly wrong or without evidence to support it." *Perkins*, 295 Va. at 327. The Commonwealth presented evidence that Officer McCarthy recovered 17.78 grams of cocaine from Robinson's car. Detective Winter opined that such a large amount of cocaine is inconsistent with personal use. He also testified that Robinson's burner phone contained messages consistent with drug sale transactions. One message referenced payment for "a pool" or an eighth of an ounce of cocaine, and another asked Robinson for a "teenager," or one-sixteenth of an ounce. Based on the admitted evidence, a rational fact finder could conclude that Robinson possessed the requisite intent to distribute. Therefore, the trial court did not err in denying Robinson's motion to strike.

CONCLUSION

Accordingly, we affirm the trial court's judgment.

*Affirmed.*